Nov. Term,<br>1831.<br><br>O'BRIEN<br>v.<br>COULTER.

---

### O'BRIEN and Another *v.* COULTER and Others.

It is a geneial rule, that to reach the equitable interest of a debtor in real estate by a suit in chancery, the creditors should first obtain a judgment at law; and to reach personal property, both a judgment and execution must be shown. One exception to this rule is, where the debtor is deceased; another exception is, where the claim is to be satisfied out of a fund accessible only by the aid of a Court of chancery.

A person indebted to several others and in insolvent circumstances, executed a conveyance of his real estate to his children, in consideration of a nominal sum and of natural love and affection, and with an intent to defraud his creditors. Two of the grantees were daughters and afterwards married. The grantor continued in possession, contracted other debts subsequently to the deed, and died insolvent. *Held,* that the conveyance was voluntary, and fraudulent and void as to the creditors of the grantor.

If the sale of town lots for taxes was authorised by the revenue act of 1818, (which is doubtful,) the validity of a sale under the act can only be established by legal proof that the law had been strictly complied with.

Two town lots, one with a house on it, the other unimproved, worth 400 or 500 dollars, weie sold together for a tax of 4 dollars. *Held,* that the sale under those circumstances was illegal.

After a lapse of 20 years, without any acknowledgment of the debt, the payment of a writing obligatory may be presumed.

THIS was a suit in equity, transferred from the *Knox* Circuit Court previously to a decree, in consequence of the interest of the Circuit Judge.

*Tuesday,*<br>*November* 8.

STEVENS, J.—The material facts in this case as disclosed by the bill, answer, exhibits, and depositions, are these:—One *Thomas Coulter,* late of the town of *Vincennes,* in the county of *Knox,* some time in the year 1826, departed this life intestate, leaving, surviving him, one son, *John Coulter,* and three daughters, that is, *Matilda,* married to *John Pitcher,* *Rosantte,* married to *Christian Graeter,* and *Ellen,* married to *Manual Rue,* the above defendants. The intestate, in his life-time, became indebted as fol-

lows: To *Jacob Kuykendall,* by writing obligatory bearing date the 15th day of *October,* 1800, in the sum of 50 dollars, payable in 30 days; also, in the further sum of 11 dollars and 75 cents, by writing obligatory bearing date the 8th of *July,* 1809, payable the 1st day of *August,* 1809. To *Thomas Jones,* by writing obligatory bearing date the 26th day of *August,* 1816, in the sum of 30 dollars. To *Hyacinth Lasselle,* by judgment rendered by *Christian Graeter,* a justice of the peace, on the 20th day of *January,* 1820, for 5 dollars and 41 cents debt and 3 dollars and 37 cents costs. And to *Dr. Elias M'Namee,* by open account for medicine and medical services, in the sum of 220 dollars and 75 cents, as follows: in the year 1819, 9 dollars and 25 cents; in the year 1820, 54 dollars and 50 cents; in the year 1821, 7 dollars; in the year 1825, 125 dollars; and in the year 1826, 25 dollars; making the sum of 220 dollars and 75 cents.

In the year 1817, the intestate was much indebted and wholly insolvent, but was the owner by legal title and possessor of a house and lot on the corner of second and *Vigo* streets, in the town of *Vincennes,* being half of lot No. 81, and a part of lot No. 80, worth at that time 400 or 500 dollars; and on the 8th day of *February,* 1817, he conveyed by deed in fee-simple with warranty to his children, *John, Matilda, Rosantte* and *Ellen Coulter,* four of the above defendants, the aforesaid house and lot and the part of lot No. 80, for and in consideration of 5 dollars and natural love and affection. He continued to use and occupy the property as his own, and enter it on the list of the tax assessor, and pay tax thereon as his own, until in the year 1823, when the whole was sold by the tax collector for the taxes and costs for the year 1823, amounting to the sum of 4 dollars; and was for that sum purchased by *John Pitcher,* one of the defendants and a son-in-law of the intestate, who received a tax collector's deed or certificate therefor. *Pitcher* occupied the house with the intestate, his father-in-law, at the time of the sale and purchase, and they continued so to occupy it together until the intestate's death, and *Pitcher* has ever since continued to occupy it. The intestate died totally insolvent, leaving no personal property whatever, nor any real estate excepting the house and lot and part of a lot aforesaid, so deeded and conveyed to his children and sold for taxes as aforesaid, and no letters of administration

have ever been taken out on his estate, there being nothing to administer on. *Pitcher*, in his answer, insists on his tax-title, and sets up in bar of the complainants' claims, the statute of limitations and the presumption of payment from lapse of time. The other defendants have failed to answer, and the bill as to them is taken for confessed.

The first objection raised is, that the complainants are not judgment creditors. It is the general doctrine, certainly, that to reach the equitable interest of the debtor in real estate by a suit in chancery, the creditor should first obtain a judgment at law; and to reach personal property, both a judgment and execution must be shown. *Brinkerhoff* v. *Brown*, 4 Johns. Ch. Rep. 671.—1 Har. Chan. 116.—1 Vern. 398.—1 P. Will. 445.—3 Litt. Rep. 12. One exception to this rule is, where the debtor is deceased. *Thompson et al.* v. *Brown et al.* 4 Johns. Ch. Rep. 619.—*Sweny et al.* v. *Ferguson, May* term, 1828. And, again, Chief Justice *Marshall*, in the case of *Russell* v. *Clark's Executors*, 7 Cranch, 89, says "that if a claim is to be satisfied out of a fund, which is accessible only by the aid of a Court of chancery, application may be made, in the first instance, to that Court, which will not require that the claim should be first established in a Court of law." This principle forms a second exception to the general rule; and this case comes within both these exceptions. The complainants in this case come in as creditors of the intestate, showing that they have no complete remedy at law, and charging that the conveyance of the intestate to his children, as to them, is fraudulent and void, and that the tax-title to *Pitcher* is not only illegal, but also fraudulent and therefore void. They pray to have these conveyances set aside and rendered null and void, and that general and proper relief be granted them in the premises. The writings obligatory, judgment, and accounts, are all exhibited and satisfactorily established.

The deed of the intestate to his children was clearly a voluntary conveyance, and no principle is better settled than the doctrine, that voluntary settlements made by a man indebted and in insolvent circumstances, are fraudulent and void against creditors, particularly so, if made with a fraudulent intent or with a view to after pecuniary difficulties. *Reade* v. *Livingston*, 3 Johns. Ch. Rep. 481.—*Bayard v. Hoffman*, 4 Johns. Ch.

Rep. 450.—*Sexton* v. *Wheaton*, 8 Wheaton, 229.—*Hinde* v. *Longworth*, 11 Wheat. 199. The conveyance in this case, it is averred by the complainants in their bill, was made by the intestate at a time when he was indebted and totally insolvent, and with a fraudulent intent as to his creditors. These allegations are not denied by the defendants, and, if they were denied, the exhibits and depositions clearly prove them to be true. It is objected, that although the conveyance was voluntary and void in its creation, yet that two of the daughters having since married, the character of the transaction as to them is changed; that marriage is the highest consideration known to the law; and that so far as these two daughters are concerned the conveyance is good, being by the marriage placed on the footing of purchasers for a valuable consideration. This as a general proposition is correct, but when applied to the case under consideration, as presented by the bill, answer, exhibits, and depositions, it has no application and cannot change the features of the transaction.

The next consideration is the tax-title of *Pitcher*. It may, perhaps, be necessary in the outset to premise, that whenever any authority is given to any person or officer by law, whereby the estates or interests of other persons may be forfeited and lost, such authority must be strictly pursued in every instance. *Yancey* v. *Hopkins*, 1 Munford, 419. In the case of *Ronkendorff* v. *Taylor's lessee*, 4 Peters, 349, it is decided, that in these *ex parte* sales, such as the sale of land for taxes, great strictness is required. Every substantial requisite of the law must be complied with. No presumption can be raised in behalf of the collector to cure any radical defect in his proceedings; and the proof of regularity devolves upon the person who claims under the collector's sale. The sale, in this case, was made under the provisions of the revenue act of 1818, and the only proof offered to establish that the requisites of the act were complied with, is the deed of the collector. If it be admitted that the averments and statements in the collector's title, like those in the deed of a sheriff, are to be taken for true until the contrary is proven, yet there is not a sufficiency of evidence in this case produced, to satisfy the Court that the substantial requisites were complied with. These requisitions are plainly delineated in the act, and those wishing to establish the validity of the

sale are bound to satisfy the Court by legal proof, that there has been a strict compliance therewith. The collector's title in this instance does not sufficiently prove those facts. It is also doubted whether the statute of 1818 authorises the sale of town lots for taxes. Some of the most correct legal characters in the state have had very strong doubts. The Court, however, on that point gives no opinion. Again, those lots with their improvements appear to have been sold in one lot for the trifling sum of 4 dollars. The law governing the sales of sheriffs on execution is, that so much only of the defendant's property shall be sold at one time, as a sound judgment would dictate to be sufficient to pay the debt, provided the part selected can be conveniently and reasonably detached from the residue and sold separately. *Reed* v. *Carter*, 1 Blackf. Rep. 410.— *Tiernan* v. *Wilson*, 6 Johns. C. Rep. 411 (1). A part of this property could have been conveniently and reasonably selected and detached, being in two separate lots of land, one with a house on it and the other without any buildings.

*Pitcher*, in his answer, admits the writings obligatory exhibited to be genuine, but alleges they must have been paid and relies on the lapse of time for proof. That after a lapse of 20 years, without a promise to pay, payment may be presumed, is correct; but no such presumption can apply in this case, the intestate having acknowledged the debt and promised payment within three years of the time of his death, as appears by the depositions.

From these views of the case, the Court thinks that the conveyance from the intestate to his children is fraudulent and void as to creditors, and that *Pitcher's* tax-title is illegal and conveys no title, and that the complainants have equity and are entitled to relief.

*Per Curiam.*—It is decreed, that the conveyance of the intestate, and the tax-title of *Pitcher*, be set aside, &c.; that the lots be sold, &c.; and that the commissioner report, &c.

*Judah*, for the complainants.
*Hall*, for the defendants.

(1) *Reed et al.* v. *Carter*, *May* term, 1834, post.