# CASES IN CHANCERY.

## MALLORY and others *vs.* VANDERHEYDEN.

The liability of a husband, for the debt of his wife, and to be sued jointly with her in an action at law for the recovery of the same, terminates upon his being discharged under the bankrupt act. And no suit at law can be maintained against the wife during the life of the husband, without joining her husband with her in the same suit. The remedy at law is therefore suspended as to the wife, or her estate, during the coverture.

But there is nothing in the English bankrupt act, or in our act of 1841, by which the discharge of the husband is made a discharge of his wife, or a discharge of her separate estate, or of her reversionary interest in her real estate after the death of her husband, from liability for debts contracted by the wife before her marriage.

Where the wife survives her husband, who has been discharged under the bankrupt act, actions at law may be maintained against her for her debts, contracted before her marriage; in the same manner as if her husband had not been discharged from his liability.

Upon the death of the husband, debts contracted by the wife before the marriage, and which have not been recovered of her and her husband during her coverture, survive against her; and the estate of her husband is not liable therefor.

Where the husband survives the wife, although he is no longer liable for debts contracted by her while sole, however much he may have received by the marriage, her separate estate, in the hands of her personal representatives, is liable for those debts.

A creditor, whose remedy at law, for the collection of a debt contracted by a married woman previous to her marriage, is suspended during the lifetime of the husband, by his discharge under the bankrupt act, may file a bill in chancery, against the husband and wife, to reach stocks standing in her name, for her sole and separate use, and other property held in the same manner, and which belonged to her before her coverture; and may have such separate property applied to the payment of his debt.

Where rights exist, and the remedy at law is inadequate to meet the justice and equity of the case, it is a part of the ordinary jurisdiction of the court of chancery to provide for such a case.

Mallory *v.* Vanderheyden.

THIS was an appeal by the defendants from a decretal order of the vice chancellor of the third circuit, overruling the demurrer to the bill of the complainants. The object of the bill was to reach certain stocks standing in the name of Mrs. Van-derheyden, for her sole and separate use, and other property held in the same manner, and which belonged to her before coverture; and to have it applied to the payment of a debt which she owed to the complainants at the time of her marriage; her husband having been discharged from his debts under the bankrupt act.

The following opinion was delivered by the vice chancellor:

PARKER, V. C.    The first inquiry in this case is, whether the facts stated in the bill of complaint and admitted by the demurrer, entitle the complainants to the relief asked for, independent of the question arising from the husband's discharge in bankruptcy, which I shall afterwards consider. It has long been a well settled rule, in equity, that a feme covert, in regard to her separate property, is considered a feme sole, and may by her contracts bind such separate estate, though she is incapable, even in equity, of binding herself personally. (*Dowling* v. *Maguire, Lloyd & Goold's Rep. temp. Plunket,* 19. *Cater* v. *Eveleigh,* 4 *Dessau. Rep.* 19. *Montgomery* v. *Eveleigh,* 1 *McCord's Ch. Rep.* 267. 17 *John. Rep.* 548. 7 *Paige,* 14, 112.) But there has been much difference of opinion as to the character of the contract necessary to bind her separate property. One of the leading cases on this subject was that of *Hulme* v. *Tenant,* (1 *Brown's Ch. Rep.* 15,) where it was held by Lord Thurlow that a bond of a feme covert, executed jointly with her husband, should bind her separate estate. The correctness of this decision was several times called in question by Lord Eldon, and particularly in *Nantes* v. *Currock,* (9 *Ves.* 181,) and in *Jones* v. *Harris,* (*Id.* 497;) yet it seems fully to be sustained by the later decisions. In *Bullpin* v. *Clark,* (17 *Ves.* 365,) a married woman had borrowed money, and having promised verbally to repay it out of her separate property, she gave her promissory note. The court of chancery decreed pay-

Mallory *v.* Vanderheyden.

ment of the debt out of the rents and profits of estates settled
to her separate use.    In the still later case of *Murray* v. *Bar-
lee,* (4 *Sim. Rep.* 82,) the vice chancellor, Sir Launcelot Shad-
well, decreed payment of a debt out of the separate property of
a feme covert, where no bond or note had been given, but
when she had promised by letter to pay the debt ; or had said
what was considered equivalent to a promise.    The same case
came before Lord Chancellor Brougham on appeal, and was
affirmed by him, in 1834.    (3 *Mylne & Keene,* 209.)    The
opinion of Chancellor Brougham goes the full length of saying
that the wife's separate property is bound, whether the promise
is in writing or verbal.    It is conceded in all these cases that
the bond, note, or promise is void and inoperative at law ; but
it is held, that in equity it shall be considered an appointment
of her sole and separate property.

The power of appointment is incident to the right to enjoy
her separate property.    There must appear to be an intention
to change her separate estate ; otherwise the debt will not
affect it.    (2 *Story's Eq.* 628.)    All these decisions proceed
upon the ground, that having contracted the debt during cov-
erture, the presumption is that she intended to charge her sep-
arate estate.    It is said by Judge Story, (2 *Story's Eq.* 773,)
that the decisions have not yet gone the full length of holding
that all her general pecuniary engagements shall be paid out
of her separate property, without some particular promise or
engagement, operating as an appointment ; but he admits that
the tendency of the more recent decisions is certainly in that
direction.    (2 *Story's Eq.* 628.    18 *Ves.* 255.)    But it seems to
me the court for the correction of errors in this state, in *Gard-
ner* v. *Gardner,* (22 *Wend.* 528,) have gone that length.    Mr.
Justice Cowen, in giving the leading opinion in that case, says,
I think the better opinion is, that separate debts, contracted
by her expressly on her own account, shall in all cases be con-
sidered an appointment, or appropriation for the benefit of the
creditor, as to so much of her separate estate as is sufficient to
pay the debt, if she be not disabled to charge it by the terms
of the donation.    And I think that such should be the rule,

and that nothing short of it will fully carry out the acknowledged doctrine, that in regard to her separate property a feme covert is to be considered a feme sole; for the property of a feme sole would be liable to all her general creditors.    In addition to the case I have referred to, the courts of this state, in other decisions, have recognized the rule as fully as it has been laid down by the English court of chancery. (7 *Paige*, 14. 3 *John. C. R.* 77. 17 *John. Rep.* 548, 580. · *Gardner* v. *Gardner*, 7 *Paige*, 112. *Shirly* v. *Shirly*, 9 *Id.* 363.)

In this case, however, it is unnecessary to look for a broader rule; for the intention to charge her separate property appears clearly from the facts set forth. From the admitted allegations in the bill, it is shown that the goods were sold, and the money advanced to the wife, while sole, upon the credit of her individual property; and that it was agreed by her that the debt should be paid by applying it on notes which the complainants owed the estate of her former husband.    This was equivalent to a direct and express agreement to pay out of her individual property, and was repeated and assented to at different times, after the marriage, by both defendants; who continued to evince a desire to have such an arrangement made till February, 1843. But it is urged by the defendants' counsel that the debt not having been contracted during coverture, the presumption that she intended to appropriate her sole and separate property does not apply. I think this objection not available; because whatever the presumption might be, this case does not rest on presumption.    The intention to pay out of her separate property is made to appear affirmatively, both before and after marriage, by the agreement to which I have already adverted.    Nothing on that subject is left to inference or presumption.    The case of *Briscoe* v. *Kennedy*, decided by the master of the rolls and reported in the note to *Hulme* v. *Tenant*, (1 *Brown's Ch. Rep.* 17,) is in point.   There the debt of the wife accrued before coverture; and after marriage the wife conveyed her property for her separate use; upon a bill filed by the creditor against the husband and wife, and after proceeding to outlawry against the

Mallory *v.* Vanderheyden.

husband, the court decreed payment of the debt out of the separate estate of the wife.

The next question to be considered is, whether the demand of the complainants was extinguished by the discharge in bankruptcy of the husband. The only adjudged case bearing on this point is that of *Miles* v. *Williams*, (1 *Peere Wms.* 257.) That was a case in the king's bench. Debt was brought against baron and feme on a bond entered into by the feme *dum sola.* The defendants pleaded the discharge of the husband in bankruptcy, to which the plaintiff demurred. After several arguments it was held that the discharge was a bar to the action; although judgment was given for the plaintiff on the demurrer, upon the ground that the plea did not conclude to the contrary. The correctness of this decision, in holding a discharge a bar to an action at law against the husband and his wife, has never been doubted. In the case now before me, previously to filing the bill, a suit at law was brought by the complainants against Vanderheyden and wife, to which they pleaded the discharge of the husband; when the complainants, acquiescing in the settled rule at law, discontinued their suit. In *Miles* v. *Williams*, Ch. J. Parker remarked, that as to the wife the bankrupt's certificate would be a discharge, at least a temporary one, viz. during the husband's life; but though it was not necessary to give an opinion upon that point, he thought it would amount to a perfect release, and that the wife would be discharged forever. This intimation is merely a dictum of the chief justice, the question being in no way involved in the case then before the court. And unless on examination it appears to be founded in principle, it cannot be regarded as authority. Let us see whether it is not in conflict with the well settled rules controlling the rights which grow out of the relations of husband and wife. The husband is liable for the debts of the wife if contracted during coverture. When the coverture is at an end his liability ceases. In case of her death, he is no longer liable; and in case of his death, the debts survive against the wife, and may be collected of her separate property, if she has any. And although she may have brought

Mallory *v.* Vanderheyden.

to her husband thousands of dollars in possession, and may have received nothing from her husband's estate at his death, and may have no separate property, still the debt survives against her on the death of the husband, and she is personally liable. The estate of the husband would not in such case be liable. His liability does not depend upon the amount he receives with his wife. The rule of law that makes him liable during coverture for her debts, contracted *dum sola*, is in no way connected with that which entitles him to his wife's property at marriage. Each is a distinct and independent principle of law. By the discharge in bankruptcy the debt is released so far as the bankrupt is concerned; that is, his liability to be sued at law, and to be compelled to pay the debt during coverture is discharged. All his liability is forever cancelled. The right to collect from his property no longer exists. The debt is fully discharged and extinguished as to him; as much so as if he had never become liable by his marriage. It can have no greater effect, for it was not his debt. The credit was not given to him; it was given to the wife *dum sola*. The creditors might have refused to give credit to him; and no act of his or hers could bind the complainants so as to transfer the indebtedness from her to him. By his marriage he did not become the principal debtor. He only assumed a contingent liability, which might be enforced or might not; and until the debt was paid it remained her debt. Reeve, in his treatise on domestic relations, says, the debt of a feme sole is not on her marriage considered as transferred to her husband. If it was, he, or his executor, would be liable after the coverture was at an end. In that case it would not, on his death, survive against the wife; neither would there be any propriety in joining the wife with the husband in a suit to collect the debt of the wife; which, however, must be done. (*Reeve's Dom. Rel.* 68.) Nor does it affect this question that the property Vanderheyden received by his wife went to his assignee, or that his assignee was entitled to collect debts due to her while sole; for the reason I have before mentioned, that his liability in no respect depended on the property he received or was entitled to

Mallory *v.* Vanderheyden.

by virtue of his marriage. If he had died before his discharge, the same property which went to his assignee would have gone to his personal representatives; but the complainants would have had no claim on his estate: much less did her indebtedness depend on the property he received. And the question here is, whether her liability, or the liability of her separate property, which she had at the time of her marriage, is extinguished. His right to receive from the executors of Bradt's estate the property belonging to her, had passed to his assignee in bankruptcy; and if the assignee filed a bill to reduce it to possession, he could be compelled to make a suitable provision for the wife and her infant children. (*Van Epps* v. *Van Deusen,* 4 *Paige,* 64. *Pierce* v. *Thomley,* 2 *Sim. Rep.* 167. *Honner* v. *Morton,* 3 *Russ.* 65, 90. *Smith* v. *Kane,* 2 *Paige,* 303.) The wife and children could therefore be provided for, independent of the stocks conveyed to her sole and separate use.

The reason urged, that the creditors had the right to prove their debt and receive their dividend in bankruptcy, adds nothing to the weight of the defendant's argument. As well might it be urged that in other cases, because the creditors had the right to collect from the husband, they would be compelled to do so, and need not wait to claim it of the wife alone after the death of the husband. In both cases it is optional with the creditor whether he will avail himself of the remedy against the husband, or his assignee; but in neither case, I apprehend, is the original indebtedness cancelled by a neglect to do so. His death would have cancelled his liability and that of his estate; and I think his discharge could have had no greater effect. The doctrine of the dictum of Chief Justice Parker is reiterated in Reeve's Domestic Relations, on the authority of that decision; but it is not examined by the author, and acquires no additional weight by this circumstance. In effect it is more like a quotation than an endorsement.

Again; the doctrine contended for by the defendant is not only at war with well settled rules, but it would be exceedingly unjust and inequitable in practice. It would enable the hus-

band to settle upon his wife, for her sole use, such of the property formerly belonging to her as he possessed, and then by his own act extinguish her debts by merely procuring a discharge in bankruptcy; thus cancelling demands without payment and without the consent of the creditor. It is provided by the revised statutes that where the wife dies, leaving property, the husband is solely entitled to administration, and is entitled to the surplus after paying her debts; (2 *R. S.* 75, §§ 29, 30, 1*st ed.;*) and such was the rule at common law. In this case, therefore, on the death of Mrs. Vanderheyden, if the husband survived, he would be entitled to her separate property, and without having first paid her debts, if these debts are extinguished by his discharge. The law cannot be chargeable with such injustice.

On the whole, I cannot believe that the discharge of Vanderheyden cancelled the debt. The claim still existed; and Mrs. Vanderheyden might be sued at law after the death of her husband. Or a proceeding in equity might sooner be instituted, against her, to reach her separate estate. Any other view of the case would countenance an act which would operate as a gross fraud upon the creditor. Even in the case of *Miles v. Williams*, the chief justice remarked that a case might possibly be put where a woman, being in debt, might make over all her effects in trust, and then marry a bankrupt; and by that, discharge all her debts, and yet preserve her estate. But that would be a fraudulent conveyance as against creditors; *quoad* so much of the estate as would satisfy their debts, and for that they might have a remedy. Even in that view of the case, these complainants would be entitled to the relief they ask for, viz. satisfaction of their debt out of her separate property. For they could not be compelled to resort to their dividend in bankruptcy, when the property which ought to pay the debt has been conveyed to her for her sole and separate use, and did not pass to the assignee in bankruptcy.

*H. Z. Hayner*, for the appellants. The complainants did not, while Mrs. Vanderheyden was a feme sole, in any way acquire

Mallory *v.* Vanderheyden.

a lien that could be enforced at law or in equity. She gave them no mortgage; they recovered no judgment against her; and no arrangement was ever made that could have been enforced at law or in equity while she was feme sole. Her becoming a feme covert, therefore, did not increase her liability.

After the defendant's intermarriage, there was nothing said or done by which Mrs. Vanderheyden charged, or intended to charge, the property held for her sole and separate use, with the payment of the complainants' demand. The property which was spoken of as being in Bigelow's hands, was not her separate property at that time. It cannot be inferred that she intended to appropriate the property held for her separate use, to the payment of the complainants' debt. All her property which was not settled to her separate use, became her husband's by the marriage; and by his bankruptcy his assignee has become entitled to it for the use of the creditors. This is so, whether her property has or has not been reduced to possession by the husband. And the legacies not bequeathed to her sole and separate use take the same direction. So also as to her real estate. (*Van Deusen* v. *Van Deusen*, 6 *Paige*, 366. *Van Epps* v. *Van Deusen*, 4 *Id.* 64, 74. *Pierce* v. *Thomley*, 2 *Sim. Rep.* 167. *Honner* v. *Morton*, 3 *Russ.* 65, 90. *Smith* v. *Kane*, 2 *Paige*, 303. *Fitzer* v. *Fitzer*, 2 *Atk.* 515. *Miles* v. *Williams*, 10 *Mod.* 244. 2 *Kent's Com.* 139.) The discharge in bankruptcy, of Vanderheyden, of itself discharges and protects his wife from this debt of the complainants during her coverture, if not forever. The debt can be proved against Vanderheyden under proceedings in bankruptcy. And it was upon that ground that the complainants abandoned their suit in the supreme court.

That there must be some appropriation of the specific property, held for the separate use of the wife, by way of appointment in equity, or some act must be shown from which such an intention on her part may be inferred; otherwise this court will not hold such property liable for the complainants' demand. The wife's intention to make her separate property liable must

---
Mallory *v.* Vanderheyden.
---

be expressed, or be clearly inferrible from the transaction. (2 *Story's Eq. Jur.* 628.) And the fact that the debt has been contracted during coverture—either as principal for herself, or as surety for her husband, or jointly with him—seems ordinarily to be sufficient to charge her separate property. (*Field* v. *Sowle,* 4 *Russ.* 112. *Aguilar* v. *Aguilar,* 5 *Mad.* 418. *Ryland* v. *Smith,* 1 *Mylne & Craig,* 53. *Lillia* v. *Airey,* 1 *Ves.* 277, 8. *Hulme* v. *Tenant,* 1 *Bro. Ch. Rep.* 16. *S. C.* 2 *Dickens,* 560. *Heally* v. *Thomas,* 15 *Ves.* 596. *Bullpin* v. *Clark,* 17 *Id.* 365. *Stuart* v. *Kirkwall,* 3 *Mad.* 387. *Gealty* v. *Noble, Id.* 94.) At first the courts seem to have supposed that nothing could affect it but some real charge, as a mortgage, or some instrument, &c. (2 *Story's Eq.* 629. *Roper, H. & W. ch.* 21, § 3, *p.* 243. *Sperling* v. *Rochfort,* 8 *Ves.* 175, *n.* 178. *Jones* v. *Harris,* 9 *Id.* 497, 8. *Nantes* v. *Corrock, Id.* 182. *Nevins* v. *Langdon,* 8 *Id.* 174, *n.* 1, 2, 3. *Whistler* v. *Newman,* 4 *Ves.* 129. *Francis* v. *Wigzell,* 1 *Mad. Rep.* 258.) Afterwards the wife's intention was more regarded, and the court only required to be satisfied that she intended to deal with her separate property. (*Murray* v. *Barlee,* 3 *Myl. & K. Rep.* 209. *S. C.* 4 *Sim. Rep.* 82. 2 *Story's Eq.* 628, *n.* 1, 629.) The principle of holding a general security, executed by a married woman, purporting to create only a personal demand, and not referring to her separate property, a charge upon such separate property is a strong case of constructive implication. And Judge Story says the courts have not gone thus far. (2 *Story's Eq.* § 1397, *n.* 5, § 1400, *n.* 1. 2 *Roper, H. & W.* 243. *Anon.* 18 *Ves. R.* 258.)

. The whole doctrine of appointment is founded on the legal disability of the feme covert, and is therefore only applicable to a debt contracted during coverture. And there is no allegation in the bill that Mrs. Vanderheyden, by any promise, ever intended to charge her sole and separate property with this debt. (*See Francis* v. *Wigzell,* 1 *Mad. R.* 258.)

*G. Stow,* same side. The agreement of Mrs. Vanderheyden *dum sola* created no charge upon her property; still less a spe-

cific lien. By her marriage her property became the property of her husband ; and she lost all power over it. The notes in the hands of the executor constituted the fund out of which the defendants, after their intermarriage, agreed to pay the complainants' debt. That fund belonged to Vanderheyden in virtue of his marriage ; his wife having no right in it, or power to dispose of it.

The separate property of a feme covert is liable in equity only because she contracted, or is supposed to contract, in reference to that separate property. In the present case, Mrs. Vanderheyden, after her marriage, made no agreement in reference to, or for the purpose of, charging her separate property, but merely the property of Vanderheyden ; and therefore, according to the principle of all the cases, her separate property is not liable. Nor does it appear that she had any separate property when the post-nuptial agreement, that the complainants' claim should be set off against the notes in the executors' hands, was made. If she had no separate property, then the agreement could not of course charge it. If she had, and if that fact is necessary to be established by the complainants, the bill is demurrable, for having omitted that allegation. The bill is also defective in not alleging that, by the post-nuptial arrangement, Mrs. Vanderheyden agreed to bind her separate estate, or that she intended to do so. In *Francis* v. *Wigzell,* (1 *Mad. R.* 258,) this was decided to be necessary. If it is necessary to allege such a post-nuptial arrangement and intention, then Mrs. Vanderheyden's separate estate in this case is not liable ; because by an arrangement that the complainants' demand should be paid out of a fund belonging legally to the husband, and which passed to the assignee in bankruptcy, she manifested no intention to charge her sole and separate estate. Even if the fund in the hands of the executor could be reached at all, under any circumstances, it cannot under the present bill—since neither the executor nor the assignee in bankrutcy is made a party— and for that reason also the demurrer is well taken.

*D. Buel,* for the respondents. It is the well-settled doctrine of the court, that a feme covert in regard to her separate property is considered a feme sole, and her separate estate is chargeable with her debts, to the same extent that the estate of a feme sole would be chargeable by the principles of the common law; in other words, her separate estate is liable for the payment of all her equitable debts. (*Prater's Law of Hus. and Wife,* 109. 2 *Story's Eq.* §§ 1399, 1400. *Hulme* v. *Tenant,* 1 *Bro. C. C.* 16, 21, *note. Lillia* v. *Airey,* 1 *Ves. jun.* 277. *Bullpin* v. *Clark,* 17 *Ves.* 365. *Jacques* v. *Methodist Church,* 17 *John.* 548. *North Am. Coal Co.* v. *Dyett,* 7 *Paige,* 9; 20 *Wend.* 570, *S. C. Gardner* v. *Gardner,* 7 *Paige,* 112; 22 *Wend.* 526, *S. C.*) It is not necessary that she should sign any writing, or make any express appointment, to charge her separate property. (*Murray* v. *Barlee,* 4 *Sim.* 82; *S. C. on appeal,* 3 *Myl. & Keene,* 209.) The doctrine now established is that her separate debts, contracted expressly on her own account, shall in all cases be considered an appointment, or appropriation for the benefit of the creditor, as to so much of her separate property as is sufficient to pay the debt; unless she is specially restrained as to the mode of charging such property by the instrument by which she acquired the same. (*Hulme* v. *Tenant,* 1 *Bro. C. C.* 15. *Gardner* v. *Gardner,* 22 *Wend.* 526, 528; 7 *Paige,* 112, *S. C.*)

The facts stated in the bill, and admitted by the demurrer, show that the debt to the complainants was contracted on the credit of property which the wife of Vanderheyden, then a feme sole, held in her own right; and which she has ever since held, and now holds, to her separate use. And equity requires that this property should be applied to pay the debt. The fact that the debt was contracted by her *dum sola,* and that she then held in her own right, as a feme sole, the property which by he consent and contrivance of her present husband has been transferred to her separate use, so far from lessening, gives strength to the equity to have that property applied to pay the complainant's debt. (*Briscoe* v. *Kennedy,* 1 *Bro. C. C.* 18, *note.*) The transfer of the property, upon the credit of which

Mallory *v.* Vanderheyden.

the debt was contracted, especially as the transfer was made on the eve of Vanderheyden's bankruptcy, will be a gross fraud upon the complainants if it cannot be appropriated to pay their debt. (*Miles* v. *Williams*, 1 *P. Wms.* 258.) Some early cases carried the doctrine still farther and subjected not only the separate property but other property to pay debts of a *feme* covert contracted *dum sola*. (*Freeman* v. *Goodham*, 1 *Cas. in Ch.* 295. *Bull* v. *Smith*, 2 *Freeman's Rep.* 231.)

The effect of the bankrupt discharge of Vanderheyden was to suspend the legal remedy by suit against husband and wife, not to discharge her debt. Nor can it affect the remedy in equity, by a proceeding *in rem* to subject her separate property to the payment of the debt. It is well settled that upon the death of the husband, his wife surviving him, she would be subject to an action at law for a debt contracted by her *dum sola*. (*Clancey's Tr.* 13. *Reeve's Dom. Rel.* 68. 2 *Kent's Com.* 123, 1*st ed*. *Woodman* v. *Chapman*, 1 *Camp. Rep.* 189, *and notes*.) So if she should die and the husband should administer, her separate property would be subjected to the payment of her debts contracted before marriage ; or if she left debts which the husband had not collected during coverture, they would be subject to her debts. (*Reeve's Dom. Rel.* 13. *Clancey*, 16. 2 *R. S.* 175, §§ 29, 30. *Id.* 98, § 79.) The suggestion of Ch. J. Parker in *Miles* v. *Williams*, (1 *P. Wms.* 253,) that the debt of the wife would be discharged by the husband's bankruptcy, is a mere *obiter dictum* and is clearly erroneous. (2 *Kent's Com.* 123, 1*st ed*.) The wife's debts contracted *dum sola* do not become the husband's debts; for if they did his executors would be chargeable, where he dies before his wife; which clearly they are not. (*Reeve's Dom. Rel.* 68, 69.)

'THE CHANCELLOR. Previous to the marriage of Mrs. Vanderheyden, all her estate was liable for the payment of this debt; whether it was held as separate estate or otherwise. And the question is whether it is equitable to permit her to hold that estate, in the events which have occurred, and to set her creditors at defiance.

Mallory *v.* Vanderheyden.

The liability of the husband, for the debt of the wife, and to be sued jointly with her in an action at law for the recovery of the same, is at an end by his discharge under the bankrupt act. (*Miles* v. *Williams*, 10 *Mod. Rep.* 160, 243 ; 1 *Peere Wms. Rep.* 249, *S. C.*) And no suit at law can be maintained against the wife, during the life of the husband, without joining him with her in the same suit. The remedy at law is therefore suspended as to the wife, or her estate, during the coverture. There is no doubt that the certificate of bankruptcy is an absolute discharge of the husband, and his estate, from all further liability for the debt of his wife. I think the reasoning of Chief Justice Parker in *Miles* v. *Williams* is conclusive on that point. He indeed intimates an opinion that the certificate of the husband will operate as an absolute discharge of the wife, even after the death of her husband. But he admitted there was no such question in the cause which he was considering. Nor was there any thing in the English bankrupt act which, in terms or by implication, made the discharge of the husband a discharge of the debt as to the wife, and her estate. The seventh section of that act declared that the bankrupt should be discharged from all debts which he owed at the time he became a bankrupt, and that if he should be sued for any such debt, he should and might plead generally that the cause of action accrued before he became bankrupt. But there is not a word in the act as to the discharge of the bankrupt's wife, or her separate estate, or her reversionary interest in her real estate after the death of her husband. Nor is there any thing in our bankrupt act of 1841, which discharges the debts, as against the wife, by the discharge of the liability of the husband. Indeed, it would be manifestly unjust and inequitable to discharge the wife absolutely, and permit her to enjoy, or to dispose of for her own use, property which might have been reached by her creditors if her husband had not been discharged upon the surrender of his own property merely, and of that which belonged to him in right of his wife. The remedy by action, therefore, as against the wife, and her estate, is only suspended by the discharge, during coverture. And where she survives her husband, ac-

tions at law may be maintained against her for the debts which she contracted before her marriage; in the same manner as if her husband had not been discharged from his liability. For upon the death of the husband, the debts contracted by her before the marriage, and which have not been recovered of her and her husband during her' coverture, survive against her; and the estate of her husband is not liable therefor. ( *Woodman* v. *Chapman,* 1 *Camp. Rep.* 189. *Chapline* v. *Moore,* 7 *Monr. Rep.* 175.) On the other hand, where the husband survives the wife, although he is no longer liable for debts contracted by her while sole, however much he may have received by the marriage, her separate estate in the hands of her personal representatives is liable for those debts. ( *McKay* v. *Allen,* 6 *Yerg. Rep.* 44.)

The debt in this case still existing as against the wife, and her property which belonged to her before marriage, and which is now holden for her separate use, and the remedy at law being suspended by the discharge of her husband, I think the vice chancellor is right in supposing the complainants could come into this court to reach her property and have it applied to the payment of their debt.

If a precedent were wanting, I should deem it my duty to make one in such a case. For where rights exist, and the remedy at law is inadequate to meet the equity and justice of the case, it is a part of the ordinary jurisdiction of this court to provide for such cases as they occur. But we have a precedent in the case of *Briscoe* v. *Kennedy,* (1 *Bro. C. C.* 18;) decided at the rolls in 1762, during the mastership of Sir Thomas Clark. There the creditor had no remedy by action against the husband and wife, because the husband had absconded, and the complainant had proceeded to outlawry against him; and had seized all his property, without being able to obtain satisfaction of the debt due from the wife. (*See* 2 *Wils.* 127.) The creditor then filed his bill in chancery to obtain payment of the wife's debt out of her separate estate. The defendant's counsel, in that case, as in this, insisted that the wife's separate estate, during the life of her husband, was not liable for the

---

deot contracted by her before marriage. But his honor decided that the effects of the wife, vested in her trustee for her separate use, were to be considered as the property of a feme sole. He therefore ordered the stock belonging to her separate estate to be appropriated to the payment of the complainant's debt and costs.

The husband, in this case, was a necessary and proper party, not only to defend the suit for the wife, but also as the trustee of his wife, whose concurrence in the sale and transfer of the trust property was, necessary to vest the legal title in the purchaser. For, as there was no other trustee, the legal title was vested in him, for the benefit of the wife, by the transfer of the stock into her name for her separate use. And as he had no beneficial interest in the property, the legal title did not pass to the assignee in bankruptcy.

The decretal order appealed from was not erroneous; and it must be affirmed with costs.