4   121
38   236
38   609

GEORGE B. KENT ET AL., Plaintiffs in Error, *v.* FRANKLIN B. CURTIS ET UX., Defendants in Error.

### May 29, 1877.

Where the petition averred that C. had converted to his own use K.'s money; that with the money C. had purchased and improved realty, which was conveyed to his wife; that part of the money thus used was C.'s and part K.'s; that C. was insolvent, and a judgment against him would be unavailing; the prayer being for a decree for the amount due K., for a sale of the property, and that out of the proceeds thereof the amount contributed by C. be paid to K. in part satisfaction of his claim; *held*, that the trial court committed no error in sustaining a demurrer to the petition and rendering judgment in favor of C. on the pleading, and that in this case the

court of equity properly refused to entertain jurisdiction until K. had first established his claim by judgment in a court of law.

*Per* HAYDEN, J. :   Plaintiff must, if he can, first establish his claim at law, before equity will take jurisdiction of a cause to reach a fund which cannot be reached by process of law.

*Per* LEWIS, P. J., and BAKEWELL, J., in separate opinions : In some cases, where the claim is to be satisfied out of a fund inaccessible by legal proceeding, application may be made to a court of chancery, which, when the claim is admitted, will not refuse to entertain jurisdiction merely because the claim has not been reduced to a judgment at law, and which, when the claim is contested, may frame issues for a jury or refuse to entertain jurisdiction.   Whether a court of equity will require the claim to be reduced to a judgment at law depends upon the peculiar circumstances of each case.   *Luthey v. Woods,* 1 Mo. App. 167.

ERROR to St. Louis Circuit Court.

*Affirmed.*

CLARKE & DILLON, for plaintiffs in error : It is not necessary to secure a judgment against an insolvent debtor and have a *nulla bona* return to the execution before proceeding in equity. — *Turner* v. *Adams,* 46 Mo. 95 ; *Pendleton* v. *Perkins,* 49 Mo. 569 ; *Luthy* v. *Woods,* 1 Mo. App. 167 ; *Beal* v. *McVicker,* 3 Mo. App. 592. Equity jurisdiction. — 1 Story's Eq. Jur., secs. 33, 60, 80, 440 ; *Dobyns* v. *McGeven,* 15 Mo. 662 ; *West* v. *Wagner,* 3 Mo. 16.

HARRIS & JOY, for defendants in error : Equity will not entertain jurisdiction except when it is shown that the debtor has exhausted his legal remedies. — *Merry* v. *Fremon,* 44 Mo. 521 ; *McDowal* v. *Cochran,* 11 Ill. 31 ; 21 Ill. 337 ; *Turner* v. *Adams,* 46 Mo. 95 ; *Wait* v. *Day,* 4 Denio, 439 ; *Postlewait* v. *Howes,* 3 Clarke (Iowa), 366 ; *McDermott* v. *Strong,* 4 Johns. Ch. 690 ; *Maguire* v. *Tyler,* 47 Mo. 127 ; *Pendleton* v. *Perkins,* 49 Mo. 567 ; *Luthy* v. *Woods,* 1 Mo. App. 167.

HAYDEN, J., delivered the opinion of the court.

This is a suit in equity to subject certain real estate to a claim not in judgment. The petition alleges that the plaintiffs employed the defendant F. B. Curtis as their agent to

sell for cash certain goods which they entrusted to his care, or which he was to buy for cash as their agent; that he was to receive the price, pay specified expenses, and to remit balances each week by draft on New York; that defendant continued a certain time in their employ, received goods to a certain amount, failed to account for a large portion, and converted the proceeds to the amount, etc. The petition then describes a lot of land lying in the city of St. Louis, and states that it was conveyed to the defendant Eliza, wife of F. B. Curtis, in whose name it is; that only a small part of the price, $1,000, was paid out of her money, and nearly the whole price, $12,000, was paid, after the demand of the plaintiffs against F. B. Curtis accrued, by him, with and out of his money or property, and out of the proceeds of goods of the plaintiffs; that after such conveyance, F. B. Curtis, subsequently to the time the demand accrued, caused buildings to be erected on the land, which were paid for by him out of his money and out of the proceeds of plaintiffs' goods; that F. B. Curtis is completely insolvent, owns or holds no property out of which the claim could be satisfied, and that a judgment at law against him would be unavailing. The prayer is for a decree for the amount, that the premises be sold, and that out of the proceeds of the sale the amount contributed by F. B. Curtis be paid to plaintiffs as part satisfaction of their demand, etc. There was a demurrer to this petition, on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained; there was judgment for the defendants on the demurrer, and the case is here by writ of error.

The first point of the appellant is that, when a judgment against the debtor would be fruitless, it is unnecessary to obtain a judgment and have execution returned *nulla bona* before proceedings in equity are taken. But the question is not as to the issue and return of execution, but as to the necessity of obtaining judgment. It is a well-known rule

of equity that where a court of chancery is rightfully in possession of a cause it will proceed to determine the whole matter in controversy, even if the adjustment of merely legal rights, or rights for which there are adequate legal remedies, are involved. But, as was said by Chief Justice Marshall, in *Russell* v. *Clark's Executors*, *infra*, it is only by an abuse of this rule that cases essentially proper to a court of law can be brought into equity. When the principal matter of controversy, the right which is the foundation of the plaintiffs' claim, is a cause of action at law, and is unadjusted, the well-established rule is that it should be ascertained and settled at law by reduction into judgment wherever it is possible to do so. The cases cited by the appellants from the reports of this State do not militate against this view. In *Turner* v. *Adams*, 46 Mo. 95, the claim of the plaintiff was in judgment at the time of the filing of the bill. In *Pendleton* v. *Perkins*, 49 Mo. 565, the debtor had absconded, so that a judgment could not be obtained against him. In *Merry* v. *Fremon*, 44 Mo. 520, it is said: "The object is, in the first place, by judgment, to reduce the creditor's claim to certainty, — to show that he is, in fact, a creditor. Unless the party shows that, he has no concern with the debtor's supposed frauds." It might have been added that, unless the claim is reduced to judgment, equity assumes at the outset, without any ground of equity jurisdiction, to ascertain and adjust a merely legal claim. It is no answer to say that the debtor is insolvent. That does not touch the question. Insolvency may be a good excuse for not issuing execution, for that might be a useless act. But to obtain a judgment at law would not be useless. It would settle the legal right; would ascertain the fact, with the ascertainment of which equity has nothing to do. It would secure the right of trial by jury in cases not of equity jurisdiction. It would prevent courts of equity from becoming the forum for the trial of suits for unliquidated damages and of actions for tort; for if the jurisdiction of

equity is not to depend on the nature of the demand, or on the question whether legal remedies have first been exhausted, why, in any case where the final process at law is inadequate to subject property to the payment of debts, may not a creditor with a claim for damages, however arising, sue first in chancery? It is an error to suppose that the object of obtaining a judgment is merely to establish a lien. The judgment ascertains and establishes the right and marks the line between common law and equity jurisdiction. Without it the plaintiff has no standing in a court of equity. The essential distinction between law and equity cannot be broken down until constitutional changes are made. It exists not only in proceedings in the trial courts, but in those in the appellate tribunals. If actions of tort and for unliquidated damages generally may be tried by a chancellor in the lower courts, where there is merely some defect or impediment in the final process, then the higher courts must consider the whole case and decide upon the evidence, according to the course of the civil law upon appeals. That which, under our system of law, is deemed the peculiar function of the jury is thus interfered with and their province is usurped by the courts. In cases like this at bar, the creditor at most needs the aid of a court of equity to enable him to get satisfaction of a judgment from property out of which he cannot make the debt at law; or, as has been said, to obtain an equitable *fieri facias*. Yet there is no allegation in the petition to the effect that the defendant F. B. Curtis is dead, or beyond the limits of the State; nothing, in short, to show that judgment could not have been obtained against him in a court of law.

If, under the circumstances of this case, a judgment is necessary to ascertain the plaintiffs' demand and give them a standing in equity, the allegation to the effect that a large part of the amount paid for the real estate was contributed by F. B. Curtis out of the proceeds of the plaintiffs' property will not help their case. The objection recurs that, be-

fore entering upon an investigation of the acts alleged to be fraudulent, the court of chancery is required to ascertain whether any legal demand exists, when no reason is shown why the appropriate tribunal has not been appealed to. To do this work, to put the claim in judgment, the remedy was here plain, adequate, and complete. If, after this had been done, the plaintiffs had reached a point where there was no sufficient remedy at law, they should then have appealed to a court of equity.

To cite the great body of cases in which it has been expressly held or assumed, as a proposition not open to argument, that a judgment must be obtained at law where this is possible, would be uselessly to encumber this opinion. It is sufficient to state some of the apparent exceptions which prove the rule. Thus, by the cases which hold that a judgment at law is a prerequisite where the debtor is dead (*Tharp* v. *Feltz's Administrator*, 6 B. Mon. 16; *Watts* v. *Gayle*, 20 Ala. 823; *Steere* v. *Hoagland*, 39 Ill. 264; *Unknown Heirs, etc.*, v. *Kimball*, 4 Ind. 546), or is beyond the jurisdiction, so that process cannot be served upon him (*Pendleton* v. *Perkins, supra;* *Scott* v. *McMillen*, 1 Litt. 302; *Brittain* v. *Quiet*, 1 Jones Eq. 328), or where the remedy at law is suspended, so that it cannot be made use of for the time being (*Mallory* v. *Vanderheyden*, 3 Barb. Ch. 9), the doctrine is clearly shown to be that the creditor must first reduce his claim to judgment if he has it in his power to do so. It has been held that where no judgment existed when the bill was filed, but where a judgment was obtained and a supplemental bill then filed, the creditor had no standing in equity. *Williams* v. *Brown*, 4 Johns. Ch. 682; *Brown* v. *Bank of Mississippi*, 31 Miss. 454. And though the bill charges fraud in the procurement of goods, and the creditor's claim rests upon a cause of action so arising, yet if the bill treats the defendant as a debtor, and proceeds upon that relation, there must be a judgment. *Wiltshire* v. *Marfleet*, 1 Edw. Ch.

654. If, however, the primary object of the bill, the first and principal purpose which it is intended to accomplish, presents in itself a cause of equity cognizance, the case is obviously not within the rule. Thus, where by the direction of the debtor the property had been conveyed in trust, for the general benefit of his creditors, to one of the defendants, and the bill was filed for all of the creditors, to establish the trust, it was held that these facts constituted the ground of jurisdiction. *Miller* v. *Davidson*, 8 Ill. 518. The case of *O'Brien* v. *Coulter*, 2 Blackf. 421, is sometimes cited as authority for the position that a judgment is not necessary to give jurisdiction to equity; but in that case the debtor was dead, and the creditors had no complete remedy at law. It is conceived that the *dictum* of Chief Justice Marshall, in *Russell* v. *Clark's Executors.*, 7 Cranch, 89,— "it is also true that if a claim is to be satisfied out of a fund which is accessible only by the aid of a court of chancery, application may be made in the first instance to that court, which will not require that the claim should be first established in a court of law,"—refers to cases where the legal remedy is not open to the creditor, otherwise the *dictum* does not seem to be supported by the adjudged cases. It is not easy to see how a distinction can be made on the ground that there is a fund accessible only by the aid of a court of chancery. Equity does not regard the mere form which property may happen to take; and whether the property is real estate or money, it may with equal propriety be said that there is a fund accessible only by the aid of a court of chancery. The cases where the property of the debtor has been attached are expressly put upon the ground that the creditor has acquired a lien, and that this fact gives the jurisdiction. *Stone* v. *Anderson*, 26 N. H. 516; *Tappan* v. *Evans*, 11 N. H. 327; *Hunt* v. *Field*, 9 N. J. Eq. 36.

Our Attachment Act provides that any attaching creditor may maintain an action for the purpose of setting aside any

fraudulent conveyance or encumbrance of or upon any property attached in any action instituted by him. Wag. Stat. 192, sec. 51. It was contended by the respondent in the present case that, as upon the facts set out in the petition, the appellant had a right to proceed by attachment against the property, this action would not lie. This position, and the bearing of the section just quoted upon it, it is not necessary to consider, as, for the reason above stated, the demurrer was properly sustained, and the judgment of the court below must be affirmed. All the judges concur in this conclusion.

Separate opinion of Lewis, P. J.

I concur in affirming the judgment, but cannot adopt all the reasoning in the leading opinion delivered. It is not, in my view, essential to this conclusion that the decisions in *Luthy* v. *Woods*, 1 Mo. App. 167, and *Beal* v. *McVicker* be overruled. Those cases were different from this, in the special features whereby the results in all should be controlled.

In each of them the primary object of the proceeding was to reach a fund in the hands of a third party, to which there was no access possible by any proceeding at law. The Board of Public Schools, in the one case, and the City of St. Louis in the other, was unapproachable by garnishment, which was the only legal method for subjecting the debtor's chose in action to the claim of his creditor. A judgment against the debtor would have been useless, not merely because he was insolvent, but because *as to that fund* an execution on the judgment would have accomplished nothing. This brought those cases within the applications of *Russell* v. *Clark*, 7 Cranch, 89, *O'Brien* v. *Coulter*, 2 Blackf. 421, and *Miller* v. *Davidson*, 3 Gilm. 523. The superadded insolvency of the debtor, showing that there was no other recourse possible for the creditor, gave additional point to the demand for equitable relief. Whatever prominence may have been given to that insolvency in either case, the fact

that the municipal corporation could not be garnished was held essential to the conclusions reached.

In the present case the effort is made to reach two certain interests which, it is alleged, are hidden behind the legal title held by the debtor's wife to the real estate described in the petition. One of these interests accrues from the fact that the debtor's money was expended in the valuable erections and improvements thereon. The other interest is one which the creditors themselves claim, by reason of the fact that their money was, through the debtor's fraud, also invested in the same erections and improvements.

As to the first, I perceive no reason why, if it can be reached at all, it cannot be reached by execution or attachment. If the debtor has, by reason of his expenditures on the property, a claim which equity might enforce against the wife holding the legal title, then he has an equitable interest which could be levied upon and sold. If, because the expenditures were voluntary, or for other reasons found sufficient, he has no such claim, then equity cannot create one for his creditors in this or any other proceeding. In either event, the wife's collusion with her husband, if provable for any purpose, would be as available in behalf of a purchaser under the execution as it could be made for the creditors here.

The interest which the creditors claim in their own behalf has no proper part in this form of action. If it amounts to any thing, it is an interest in the real estate, wholly independent of the fact that the debtor owes them money. If they have assented to the investment, they have, so far, no claim remaining to be enforced against the debtor, and must stand or fall in a contest upon other ground, with the holder of the legal title. If they repudiate the investment, their claim subsists against the debtor for so much money improperly converted, and must be enforced as any other money demand might be.

I am, therefore, of opinion that no sufficient claim for

equitable relief is shown in this case, and that the plaintiffs should seek their remedy against the debtor in an ordinary judgment at law. If the facts stated in their petition be true, such a judgment would either not be unavailing, or would not be any more so than would the case they might make out in this proceeding.

Separate opinion by BAKEWELL, J.

I do not consider this case as overruling the case of *Luthy* v. *Woods*, recently decided by this court. I concur in the conclusion arrived at by the court in the case at bar, but do not assent to so much of the reasoning as may be in conflict with what is said in the last-named case.

In *Luthy* v. *Woods* the petition had three counts, — one on an account, and two on a note; all these causes of action were against Woods & Barnes; the petition then alleged the insolvency of Woods & Barnes, and that process against them would be unavailing; that the defendant, the Public Schools, is a corporation not subject to garnishment, and is indebted to Woods & Barnes; and asked for judgment against them, and for a decree that the Public Schools pay plaintiff's claim out of the money due by them to Woods & Barnes.

There was an answer of Woods & Barnes denying the indebtedness, and the Public Schools demurred to the petition. The Circuit Court sustained the demurrer, on the ground that plaintiff had not established his claim against Woods & Barnes in a court of law. It could have sustained the demurrer on no other ground, for it was already settled in this State that a municipal corporation not liable to garnishment could be reached by bill in equity.

In that case the court deliberately took a step forward which it is now asked to retract. It had been already held that, where judgment was obtained, a court of equity would entertain jurisdiction to reach assets not to be subjected to process at law without requiring execution and a return of

*nulla bona* to be shown where the defendant is insolvent; but we were asked to say, further, that where the creditor is insolvent a court of equity will not, in every case, require that the claim shall have been established in a court of law ; but in a proper case, and to prevent circuity of action, will give relief where a judgment had not been obtained, even though the debtor has not absconded, and where a judgment can be obtained against him, provided it is shown that there are no assets which execution issued on that judgment can reach.

It was believed that there had been for years a steady tendency to such a result, and it was said that such a step, though a decided and marked advance, was but following to its strict logical consequences the case of *Pendleton* v. *Perkins*, 49 Mo. 565.

It was conceded that no adjudged case could be found in which it had been decided, as the very point in the case, that a court of equity would entertain a creditor's bill where the demand could be first established in a court of law against a living debtor and this had not been done. In all the cases the debtor was dead, or was beyond the reach of process.

But it had been said by Chief Justice Marshall, in *Russell* v. *Clark*, 7 Cranch, 89, that " if a claim is to be satisfied out of a fund which is accessible only by the aid of a court of chancery, application may be made in the first instance to that court, which will not require that the claim should be first established in a court of law."

In *O'Brien* v. *Coulter*, 2 Blackf. 421, it was held that, to the general rule that to reach the equitable interest of a debtor the creditor must first get his judgment at law, there are two exceptions : first, where the debtor is deceased ; second, where the claim is to be satisfied out of a fund accessible only by the aid of a court of chancery.

And in *Miller* v. *Davidson*, 3 Gilm. 523, it is said, following Chief Justice Marshall : " There are some peculiar cases, however, where a party seeks satisfaction of his debt

directly, in which he may come into a court of chancery in the first instance, without first obtaining a judgment. Thus, if a claim is to be satisfied out of a fund accessible only by the aid of a court of chancery, application may be made in the first instance to that court, which will not require that the claim should first be established in a court of law. Although the jurisdiction of the court might, in this case, perhaps, be sustained on that principle, yet it may be placed upon higher and more unquestioned grounds," etc.

Though this doctrine has been accepted by this court as true in *Luthy* v. *Woods*, it has not been said to be of universal application. To justify a court of equity in granting relief in cases of this sort, the relief should be, as it was in that case, and in the subsequent case of *Beal* v. *Mc Vicker*, of such a nature as a court of equity may properly grant. If, therefore, the proper relief be by an award of damages, which can alone be determined by a jury, there may be a strong reason for declining the exercise of the jurisdiction; and so in many other cases where a question arises purely of matter of fact, fit to be tried by a jury, and the relief depends on that question as a main question in the case, jurisdiction for relief should be declined; or, if retained, issues should be directed to a jury. Story's Eq. Jur., sec. 72. This distinction furnishes a clear line; — a line as clear, at least, as is furnished where equity, departing from matters of fraud, accident, mistake, and account as foundations of its jurisdiction, entertains, as it constantly does, bills of relief on the ground of discovery. In those cases where the remedy at law is considered more appropriate, equity sometimes declines the jurisdiction, and sometimes assumes and retains it, subject to a trial at law. Story's Eq. Jur., sec. 73.

That the distinction between the remedies must be kept up is indisputable. In an action at law there is a constitutional right to a trial by jury, which has no existence in equity; and the defendant may stand upon and insist upon

that right, and is not to be deprived of it merely because he is insolvent. But, in the cases heretofore presented to the court, the question of indebtedness was admitted. When this is so, I think it contrary to the spirit of our system of jurisprudence and to the course of modern decisions, especially in this State, to compel the suitor to establish his claim at law before he comes to equity for relief. Where this is a mere barren ceremony, it should never be insisted upon. Each case must stand on its own peculiar facts ; but I think that a court of equity will not refuse to entertain jurisdiction in cases of this sort merely because the claim is not in judgment.