## JACKSON *a.* SHELDON.

*Supreme Court, First District; General Term, February,* 1859.

JUDGMENT.—INSOLVENT LIMITED PARTNERSHIP.—INJUNCTION AND RECEIVER.—MOTION AND ORDER.

When a limited partnership becomes insolvent, the partnership property becomes trust funds, which it is the duty of the partners to place in the hands of a trustee for the benefit of all creditors without preferences. It is not in the power of a portion of the creditors to obtain, by any act or omission on the part of the partners, a priority over other creditors.

Certain creditors obtained judgments upon failure to answer against an insolvent limited partnership, and levied execution on the partnership effects, after which the partners made a general assignment for benefit of creditors, without preferences.

*Held,* that the court should, at suit of a creditor at large, enjoin those proceedings and appoint a receiver to take charge of all the assets of the firm, as they existed at the time of its insolvency, discharged of the liens of the executions, and to distribute the same equally among all the creditors.

A creditor who brought an action seeking such relief, moved in his own action for an order that the sale under the executions issued on the judgments which he attached, be set aside for certain alleged irregularities, and that the sheriff be directed to hold the property levied upon subject to the further order of the court.

*Held,* that the motion, in so far as it sought to set aside the sale for irregularity, should have been made in the action in which the sale was had; but so far as it sought an order directing the sheriff to retain the property unsold, and that its proceeds be distributed among all the creditors, it was properly made in the creditor's action, and must in so far be granted.

Appeal from an order denying motion for an injunction, and the appointment of a receiver; and appeal from an order denying a motion to set aside a sale on execution.

This was a *creditor's action,* brought by the plaintiff who was

a creditor at large of the defendants, O. L. and H. B. Sheldon and William L. Harris, who were copartners under the firm of Sheldon & Harris. The partnership was a special partnership formed under the provisions of the Revised Statutes. Certain judgments having been recovered against the members of this firm on their partnership liabilities, by Henry K., James W., and Ann P. Sheldon, and their partnership property having been levied on and partly sold under these judgments, they made an assignment for benefit of creditors to W. K. Hoyt, who was a partner of Henry K. Sheldon. The plaintiff, on his own behalf, and on behalf of all other creditors who might come in, commenced the present action against the members of the firm, and against the plaintiffs in those judgments and executions, to have the judgments set aside, and the sale vacated, and a receiver appointed to take possession of the partnership assets, and apply them equably among all the creditors.

I. Appeal from order denying an injunction and receiver.

The plaintiff in this action moved at special term for an injunction, restraining the plaintiffs in the executions from proceeding to enforce their judgments. The affidavits on which this motion was made, alleged that in March, 1858, some members of the special partnership had represented that their firm was solvent, and had a large capital; that on the 15th of January, 1858, one of the firm had represented that the firm had not in the year passed asked any extension or financial favors of any one, and they did not owe any borrowed money in such a way as to pledge, really or impliedly, their capital in protection of confidential claims, and that they had not borrowed any money except in the way of ordinary discounts at the banks. It was further alleged that the assignee of the defendants, O. L. and H. B. Sheldon and Harris, had stated that he did not know of the existence of any judgment against them when he consented to act as assignee, and not until the execution of the assignment; that, although the deponent, a creditor, conversed with members of the firm after their failure in respect to the state of their affairs, they did not disclose the existence of the judgments, but gave deponent to understand that their assets would be divided ratably under the assignment. The affidavit of

Jackson *a.* Sheldon.

other creditors was produced to the effect that up to the time of the failure, the firm was doing business as usual, and that the deponents believed that none of their notes were protested. The moving affidavits further stated that the judgments which were sought to be set aside, were; one in favor of Henry K. Sheldon, filed on the 29th day of September, 1858, for $30,254.95, the causes of action stated in the complaint being eight notes of the firm, made in August, 1855; that the complaint was verified on the 4th day of September, but that it did not state when the notes were payable, nor did it allege any demand or protest; that there was an affidavit of personal service on the defendants, and an appearance for them in the action, but also an affidavit of no answer having been put in. The next judgment was in favor of the defendant in this action, Ann P. Sheldon, entered on the same day, for $24,063.24; that the causes of action stated in the complaint were several notes, three of which were dated in August, 1855, others in 1858, some being shortly before the failure; but with no averment of demand or protest; and the affidavit stated that the complaint was verified by the other defendant, Henry K. Sheldon, as having possession of the notes; that there was also in this case an affidavit of personal service on the defendants, an appearance for them, and an affidavit of no answer having been put in. The next judgment was in favor of James Sheldon, entered on the same day, on promissory notes dated in August, 1858, and each payable one day after date, the complaint containing no allegation of demand or protest, and being verified by Henry K. Sheldon as having possession of the notes; and the affidavit stated that there was proof of personal service, and an appearance, but also no answer. The next judgment was in favor of Henry K. Sheldon, entered on the same day on a note dated the 4th of September, 1858, for $19,658.54, payable on demand, but the complaint contained no allegation of demand or protest; there was proof of personal service, and an appearance, but no answer.

The affidavits to oppose the motion denied that any concealment had been made of these actions brought, or these judgments recovered. The defendant H. B. Sheldon in his affidavit explained that the note of $19,658.54, which was dated 4th September, 1858, was given by his firm to Henry K. Sheldon,

on his taking up from a bank the note of the firm for a like amount, and the collaterals thereto, which was due on that day, and which the bank declined to extend for the firm ; and that this arrangement was completed before he had any suspicion that either Henry, Ann, or James Sheldon had any intention of suing on the notes, and that he did not at that time believe his firm to be insolvent, but expected that it would go on and meet its liabilities ; and that the arrangement was not made with any intent to give the bank or H. K. Sheldon any preference ; and that when they were afterwards sued, they honestly endeavored to delay judgment, and consulted counsel with intent to do so, and had an appearance entered ; but their counsel advised them that they could not make any true answer which would avail them for any delay ; that their balance-sheet in January preceeding showed a large surplus, and that up to the time the actions were commenced, deponent believed the firm to be solvent. The affidavit of Henry K. Sheldon alleged that he never, prior to, nor when he made the arrangement, in any manner intimated or stated to either of the partners of Sheldon & Harris, that deponent or his mother or James O. Sheldon intended to, or expected to, or meant to bring any action against the said firm, or the members, on the demands they held, or any other demands ; and that he verily believes that neither of the partners of said firm, had any idea or suspicion that any such action or actions would be commenced ; that after he had entered into such arrangements, and taken up the paper of Sheldon & Harris at the bank, and received their note therefor, it became apparent to deponent that Sheldon & Harris would be unable to go through with their business and meet engagements, and he thereupon placed the demands in his attorney's hands to sue ; that there had never been any collusion between deponent or either said Ann P. or James O. Sheldon, with Sheldon & Harris, or any partner thereof to his knowledge, for the purpose or with intent to have them obtain judgments by default against said Sheldon & Harris ; that he actually took up the notes and papers of Sheldon & Harris on the 4th September, at the bank, to the amount of the note given him, and gave the notes to Sheldon & Harris, and satisfied the bank for the same with his own paper. The affidavit of the attorney for the plaintiffs in these judgments showed that no

instructions were given to conceal the fact of the commencement of the actions, or the existence of the judgments.

The motion for an injunction was denied, and the plaintiff appealed to the general term.

*R. B. Roosevelt*, for the appellant.—I. The injunction sought is for the protection of the property in dispute till the termination of the action, and the application for it does not require to be based on such conclusive proof as the plaintiff would be held to make on the trial.

II. Property of an insolvent special partnership is a fund for the payment of all the debts of the partnership, whether by judgment or otherwise. (2 *Rev. Stats.*, 766, 4th ed., 175, § 20; Jones *a.* Lansing, 7 *Paige*, 583; Hayes *a.* Heyer, 3 *Sandf.*, 293; Whitewright *a.* Stimpson, 2 *Barb.*, 379.) The case of Reubens *a.* Joel does not apply to this case. Here the plaintiff is proceeding, not to set aside the judgments, which is not a necessary part of the relief demanded by the complaint, but under the statute to restrain proceedings on the judgments until the partnership property be applied to the partnership debts.

III. The facts show collusion between the judgment-creditors and the other defendants. The defendants' attorneys admitted short notice of adjustment of costs, by which one day was lost, and on that day the defendant Harris joined in the assignment.

IV. The suit on the note given August 31, payable one day after date, was commenced too soon, the makers being entitled to three days' grace.

V. The note of the 4th of September was accompanied by collateral security, and was therefore void within the words of the statute, which prohibit security being given by an insolvent special partnership.

VI. This action being brought for the benefit of all creditors equally, who shall come in, is a lien from its commencement.

*Tracy, Powers & Tallmadge*, for the respondents Sheldons.

*Bogardus & Brown*, for the respondents Sheldons and Harris, the judgment-debtors.

By THE COURT.—DAVIES, J.—The plaintiff is a creditor of a special or limited partnership, composed of the defendants Odiah

L. Sheldon, Horace B. Sheldon, and William L. Harris as general partners, and Lucius B. Sheldon as special partner.

The other defendants, then creditors of this limited partnership, and under circumstances not free from suspicion as to its fairness, commenced suits against the general partners in September, 1858, and no defence being interposed, at the expiration of twenty days from the service of the summons obtained judgments against the general partners for about the sum of $80,785. All these judgments' were .perfected on the same day and by the same attorney for all the plaintiffs therein, and on the next day following, after the issuing of execution thereon, and a levy on the goods of the defendants, they made a general assignment for the benefit of all their creditors. This was the only assignment or transfer of their property which the law permits, and if the judgments obtained by their relatives, on the 29th of September, and which operated as an effectual transfer of their property, and a preference of those creditors, were obtained collusively, or in violation of the spirit and intent of the statute, then they fall within its prohibition, and must be held to be in fraud of it, and therefore void.

That at the time these judgments were obtained the partnership was insolvent, there cannot be any question.

Now the provisions of the statute are, that any sale, assignment, or transfer of any of the property or effects of such partnership, made by such partnership when insolvent, with intent of giving a preference to any creditor of the partnership over other creditors of such partnership, and every judgment confessed, lien created, or security given by such partnership under the like circumstances, and with the like intent, shall be void as against the creditors of the partnership. (3 *Rev. Stats.*, 5th ed., p. 64.)

Nearly the same language is used in reference to the insolvency of moneyed corporations. The statute in reference to them declares, that no conveyance of the property of a moneyed corporation, assignment, or transfer thereof, nor any payment made, judgment suffered, lien created, or security given, by any such corporation when insolvent, with the intent of giving a preference to any particular creditor over other creditors of the company, shall be valid in law. (2 *Rev. Stats.*, 5th ed., p. 519.) It is apparent that the object and intent of the statute in both

cases, in the event of insolvency, was to secure equality among the creditors of either the partnership or of the corporation: It has sought to prohibit, in the most emphatic terms, the doing of any act whereby one creditor should obtain a preference over others, and that if any such act is done or suffered it shall be ineffectual to carry out the intent of a preference.

The plaintiff in this cause is a creditor of this partnership, and as such is entitled to have the funds of it applied to the payment of all its debts *pro rata.*

And Chancellor Walworth, in Inmes *a.* Lansing (7 *Paige*, 586), says: "That if the insolvent partners neglect to place the partnership effects in the hands of a proper and responsible trustee, to be distributed without delay among all the creditors of the firm, other than the special partner, ratably, in proportion to the amounts of their several debts, either due or to become due ; any creditor may file a bill in this court in behalf of himself and the other creditors of the firm, and may have a receiver appointed to protect the trust-fund, and to distribute it among the several creditors who may come in and prove their debts, under the decree to be obtained on such bill."

The chancellor also says, in this case, that this court is bound to carry into effect the principle of the statute, namely, " an equal distribution of the partnership effects among all its creditors, by treating the property of the limited partnership *after insolvency*, as *a trust-fund* for the benefit of all the creditors." The same principles are reaffirmed in Hayes *a.* Heyer (3 *Sandf.*, 203) ; see also Whitewright *a.* Stimpson (2 *Barb.*, 379).

These cases, therefore, fully sustain the proposition, that as soon as the special partnership becomes insolvent, it is the duty of the general partners to place the assets of the firm in the hands of a competent trustee, to divide the same equally among its creditors. The question presented in this case is, whether having neglected that duty, the court will permit them, by reason of such omission to accomplish indirectly, what they are prohibited from doing directly—give a preference among their creditors. I think, clearly not. The moment the firm became insolvent, their effects became *trust-funds*, to be divided equally among all their creditors. No one creditor could obtain a preference over another, for payment out of this fund, by reason of any act of omission or commission on the part of these,

whose duty it was immediately to place the funds and assets in the hands of a competent trustee. On the happening of insolvency, the assets of a limited copartnership, equally with those of a moneyed corporation, have attached to them the character of trust-funds, in which all creditors are entitled equally to participate, and in which no one can share to the disadvantage of the others. There is no hardship in this, for all dealing with a limited partnership or a moneyed corporation are assumed to know the law. They must be held to deal with their debtor, whether it be the one or the other, with full knowledge of the fact; that if it becomes insolvent, from that moment all its assets and effects are irrevocably pledged and devoted to an equal distribution among its creditors. No act of any creditor, by vigilance or otherwise, in collusion with the debtor, or by his remaining passive, can obtain a preference or priority, which the law prohibits and makes void. The law does not permit one *cestui que trust* to obtain or retain a trust-fund for his benefit, to the exclusion of the other *cestuis que trusts.*

The general partners of this special partnership, not having discharged the duty which the law casts upon them, on the happening of the insolvency of the partnership, by placing the trust-funds in the hands of a competent trustee, for equal distribution among all the creditors, it is entirely competent for this plaintiff to invoke the aid of this court, to accomplish the same result. It is the duty of this court to appoint a receiver for that purpose, who will be entitled to take charge of and possess himself of all the assets, funds, and effects of said partnership as they existed at the time of its insolvency, discharged of all liens, suffered or created since the happening of that event, and to collect in the same, and to distribute the same equally among all the creditors of the partnership.

The injunction and receiver as prayed for in the complaint should have been granted, and the order appealed from denying the same, must be reversed, with costs.

ROOSEVELT, P. J.—concurred.

CLERKE, J. (dissenting).—I entirely dissent from this opinion. There is not a particle of evidence showing collusion or connivance between the plaintiffs and defendants in the judgments

sought to be set aside by this action. It is based upon mere suspicion, arising from the relationship of the parties. The actions in which those judgments were recovered, were commenced without any communication or understanding between the parties, or even any knowledge on the part· of the defendants therein, until the summonses were served. At all events, there is no evidence whatever of any such communication, understanding, or knowledge, but rather the contrary,—namely, a determination, if possible, to defend them. I repeat, there is no *proof* of collusion, but so far from it, *the proof discloses resistance.* And the material of which this motion is composed, is solely suspicion; which, *as suspicion,* may be plausible; but, as the foundation of a legal proceeding, is most unsafe. The judgment-creditors have done nothing more than, by superior vigilance, to secure their debts; if they were the greatest strangers and most bitter enemies of the defendants in these judgments, they could have done nothing more or less to satisfy their claims than they have done.

II. Appeal from order denying motion to vacate sale, and direct sheriff to retain property and proceeds.

At about the same time that the plaintiff moved for the injunction as above stated, he moved also in the same action for an order that the sales already made by the sheriff, under the executions and judgments which the plaintiff sought to avoid, should be set aside, and a new sale ordered.

The motion was founded on affidavits, alleging that the property sold was not sufficiently advertised and exposed, and was sold for inadequate prices. The affidavits to oppose the motion responded very fully to these allegations. The details of the affidavits it is not necessary to state. The motion was denied at special term, and the plaintiff appealed.

*R. B. Roosevelt,* for the appellant.

*Tracy, Powers & Tallmadge,* for respondents Sheldons, the judgment-creditors.

*Bogardus & Brown,* for respondents Sheldons and Harris, the judgment-debtors.

By the Court.—Davies, J.—This suit is instituted for the purpose of setting aside certain judgments entered by default against the defendants Odiah L. Sheldon, Horace B. Sheldon, and William Harris, in favor of the other defendants James O. Sheldon, Henry K. Sheldon, and Ann P. Sheldon. The defendants in those judgments being the general partners of a limited partnership, composed of them and one Lucius M. Sheldon. Executions were issued upon those judgments, by virtue of which the property of the judgment-debtors has been levied upon and sold by the sheriff of the city and county of New York.

A motion is made in this cause to vacate and set aside such sale, on the ground of certain alleged irregularities, in conducting the sale.

A careful perusal of the affidavits has failed to satisfy my mind that the irregularities complained of are of that serious character, which would warrant the court upon that ground to vacate the sale.

The affidavits of the auctioneer and deputy sheriff, the latter particularly having had long and great experience in conducting such sales, are positive, that every effort was made to display the goods so as to bring the best price, and every precaution used to give the utmost publicity to the sale, and insure the greatest number of bidders. The evidence is not clear that the goods were not properly arranged in lots, and put up so as to bring the best prices.

The affidavits certainly preponderate in establishing that the sale was fairly conducted, that the goods were well arranged for the sale, and that the prices obtained were as near the value of the goods sold as is usual on sheriffs' sales.

But a fatal objection to this motion, we think, is, that it is not made in the suits in which the executions were issued. The object of the motion is to correct an irregularity in these suits, to set aside a proceeding had in them, and to obtain a re-sale upon the executions issued in these suits.

The application for such relief, we think, should have been made in these suits, and if the sale which has been had by virtue of the execution issued in them was irregular and should be set aside, and a resale ordered, it was proper that such orders should have been made in these suits. So far as setting the sale aside for irregularity, it was a proceeding in them which is

Jackson *a.* Fassett.

sought to be corrected by a motion in this cause, and we think the motion for that purpose should have been made in those causes.

But the motion asked for more, that the sheriff should retain possession of the property levied upon, and hold the same to abide the further order of this court.

If the views expressed on the other appeal in this cause are correct, then clearly it was the duty of this court to direct the sheriff to retain such property or its proceeds, to be distributed equally among the persons entitled thereto. The order appealed from was, therefore, erroneous in refusing to grant the relief asked for by the plaintiff, and should, therefore, for this reason be reversed, but without costs.

ROOSEVELT, J.—concurred.

CLERKE, J.—dissented.

## JACKSON *a.* FASSETT.

*Supreme Court, First District; Special Term, January,* 1859.

### MOTION FOR NEW TRIAL.—APPEAL.

Upon exceptions taken to the ruling of the judge and his charge, at the trial, the defendant, after judgment entered on a verdict against him, moved at special term, before another justice, for a new trial.

*Held,* that the motion should be denied. Although the justice before whom the cause was tried may entertain such motion, another justice cannot : nor can it be made in any way after judgment is perfected. The only mode of reviewing the judgment is by appeal.*

Motion for a new trial.

This was an action against the drawer and indòrsers of a bill of exchange or draft, and was tried at a circuit in the first dis-

---

* Compare Molony *a.* Dows, *Ante,* 86.