THE ARTISANS' BANK *vs.* WILLIAM B. TREADWELL, JOHN G. TREADWELL, JOHN S. PERRY and EDWARD NORTON.

JOHN G. TREADWELL *vs.* WILLIAM B. TREADWELL, JOHN S. PERRY, EDWARD NORTON and JOHN F. RATHBONE.

Where it appears, from the opinion of the judge, that an order denying an application at a special term, was not made for merely *discretionary* reasons, it is the subject of appeal, and liable to be reversed, if erroneously made.

Where a judge, at special term, denied an application made by the plaintiff in a judgment recovered against a special partnership, that the receiver should pay the amount of such judgment out of funds of the partnership in his hands, on two grounds: 1. That the judgment and execution could not by law take preference over the demands of the general creditors of the partnership; and, 2. That the receiver's rights took effect, by relation back to the commencement of the action in which he was appointed, which was prior to the plaintiff's lien by execution; *Held* that the decision, upon either of these grounds, was a decision upon the *merits* of the application.

An order denying to the plaintiffs the exclusive right to a large sum of money may be appropriately said to affect a substantial right, and is therefore appealable.

Wherever funds converted into cash are held by a sheriff, receiver, or other officer or trustee, any one of the claimants of such fund may make a motion, upon notice to the other parties interested and to the officer holding the funds, for an order directing their payment to him.

A judgment is not irregular though not signed by the clerk; at least not void, so as to enable a third person to object to its invalidity on that ground. Signing is not indispensable to its validity.

The order appointing a receiver cannot, as against third persons, date or relate back beyond the time of granting it. And it is irregular and improper to insert a clause to that effect in the order.

Although, to constitute a *levy*, the officer must see the goods, and they must be within his power—at least so far as to assert title to them in the presence of those who obstruct the execution of his process—it is not necessary that the debtor, or owner of the goods, shall acquiesce in the levy.

For a debt owing by all the partners—general and special—in a limited partnership, a suit is well brought against the general partners alone. And a judgment and execution in such suit, levied upon the property of the partnership, will bind the entire interest of all the partners.

The provision of the statute, that suits in relation to the business of a limited partnership, "may be brought and conducted by and against the general partners, in the same manner as if there were no special partners," must be construed to mean, not only that they may be thus brought "in the same manner," but "with the same effect."

The Artisans' Bank *v.* Treadwell.

When a limited partnership becomes insolvent, its assets do not, from that time, irrespective of the condition of any creditor's demand, become trust funds for the benefit of all the creditors of the partnership; so as to prevent a creditor, either by superior diligence or by the favor of the partners, from acquiring or possessing a valid lien thereon in preference to other creditors.

The assets of the partnership are trust funds for the benefit of the creditors equally, except such as by superior vigilance have obtained a lien on the property of the partnership. And they become trust funds for such mode of distribution, so far as any action of the partners is concerned, at the time of insolvency; and so far as the action of creditors is concerned, at the time the court takes possession of the fund, either by decree or by the appointment of a receiver. Until that time, it is the right of every creditor to seek a preference, and to obtain one if he can, by superior vigilance.

MOTION on behalf of the Artisans' Bank. and of the sheriff of Albany county, for an order to pay to the Artisans' Bank $17,273.94, and $74.05 costs, being the amount of their judgments, or to apply thereupon the proceeds of certain sales made by the receiver. The facts are as follows: On the 1st day of November, 1854, the five parties, plaintiff and defendants, in the second action, formed a limited partnership, under the name of W. & J. Treadwell, Perry & Norton, to commence that day and to terminate January 1, 1860; John F. Rathbone being the special partner, and the others the general partners. Before January 1st, 1860, this limited partnership, and all the general partners thereof, had become, and were, and ever since have been, and still are, insolvent and unable to pay the debts of said partnership. On the 15th day of May, 1860, and before the issuing of an execution in the first action, the action secondly entitled was commenced, by the personal service of a summons on all the defendants, for the settlement of the said limited partnership business, and the appointment of a receiver of said partnership. On the 16th day of May, 1860, by an order of this court, made on notice at special term, James C. Cook was appointed by an order of this court, in the second action, receiver of the limited partnership; his rights, powers and authorities declared in said order, to take effect as from the

commencement of the action. On the same day the receiver gave the required bonds and entered on the duties of his office, and took possession of the partnership property, including all such as is claimed to have been levied upon under the execution in the first action. Up to the time when the receiver thus took possession, the partnership had continued to be in possession of the said property, and from that time the same continued in the possession of the receiver until it was sold. The greater part of the property was sold at auction, August 30th, 1860, under a special order of this court, but without prejudice to the rights of the Artisans' Bank. After his appointment, by special order of the court, the receiver manufactured some of the property; borrowed money as directed, and finally sold the remaining part of the property on credit, as specially directed; and he now holds notes for the purchase money, which the plaintiffs are willing to take. The Artisans' Bank commenced the action first entitled against the defendants therein, the general partners. The summons and complaint therein were served on Edward Norton, March 27th, 1860, and had been previously served on the other defendants. On the 12th day of April, 1860, an order was granted, giving the defendants twenty days' additional time to answer, and that order was served the next day. On the 5th day of May, 1860, another order was granted, giving the defendants fifteen days' further time from May 7th to answer, and that order was served the same day. At the request of the plaintiffs' attorney, this last order was waived by the defendants' attorney, May 7th, 1860, upon the written stipulation of the plaintiffs' attorney, extending for seven days further the time to answer, granted by the first order, viz. that of April 12, 1860. On the 14th day of May, 1860, in the morning, the defendants served an answer verified by Edward Norton. On the 15th day of May, 1860, at 11 o'clock A. M. the answer was returned with the objection that the time to answer, as to all but Edward Norton, had expired previously to May 7th, 1860, and that a

joint answer could not therefore be put in. On the same day and at the same time the plaintiffs' attorney served a notice of taxation of costs for May 17th, 1860. Previously, however, to the time of returning said answer and serving said notice, and at 23 minutes after 10 A. M. of the 15th day of May, 1860, the plaintiffs' attorney had perfected a judgment without costs, and had sent an execution thereon to the sheriff of Albany county, which came to the sheriff's hands at about 5 P. M. of that day. The sheriff went to the premises that day, but did not oust the defendants of the possession of the goods, and made, as he claims, an actual levy. It is not disputed that the sheriff saw the goods, and stated that he made a levy, and claimed such levy, to the defendants, but they and the receiver claim that it was not a sufficient levy; that he did not take actual possession; and that the defendants did not acquiesce in the levy. A week or two after the receiver had taken possession, the sheriff, by virtue of an attachment against one John T. Norton, attached these same goods as the property of Norton, and with appraisers, made an inventory; of which attachment he gave public notice at the day of sale. Neither under the execution nor under the attachment did the sheriff ever take any actual possession of any of the goods, or interfere therewith, exclusive of the defendants or the receiver, otherwise than is above mentioned.

The causes of action, on which the judgment in favor of the Artisans' Bank was recovered, were against the partnership, but, as alleged by the defendants, were not contracted in the business, or for the benefit of the partnership. The judgment roll in the first action is not signed by either the clerk or the plaintiffs' attorneys. The assets in the receiver's hands are insufficient to pay the partnership debts.

The defendants in the first action, claiming the judgment therein to be irregular and unwarranted, made a motion to set the same aside, which motion was granted on terms; the judgment and execution already obtained, to stand as secu-

rity. The action was subsequently tried before a referee, who, after hearing the parties, made a report in favor of the plaintiffs, on which judgment was again entered in their behalf.

On these facts a motion was made, before Justice GOULD, at a special term, on the last Tuesday of February, 1861, to have the receiver, out of the moneys or notes in his hands, being the proceeds of the sale of the personal property of the partnership, pay to the plaintiffs their judgment, or apply said proceeds thereon. The justice denied the motion, upon the ground that the assets of the partnership must be distributed among the creditors equally, and that the Artisans' Bank was not entitled to a preference by reason of the levy; and also on the ground that the appointment of the receiver overreached the levy, and related back, in legal effect, to the commencement of the second action. The Artisans' Bank appealed to the general term.

*Ira Harris,* for the appellants.

*W. L. Learned,* for the respondent, (receiver.)

*By the Court,* HOGEBOOM, J. The judge at special term denied the plaintiffs' application on two grounds: 1. That the judgment and execution could not by law take preference over the demands of the general creditors of the partnership; 2. That the receiver's rights took effect by relation back to the commencement of the action for closing up the affairs of the limited partnership,' which was prior to the plaintiffs' lien by execution. Either of these positions, if correct, was fatal to the plaintiffs' application; and each was a decision upon the *merits* of the application. The judge had the discretion to refuse the order, upon the ground that a case of so much magnitude was a fit case for a more deliberate consideration and investigation than were likely to be given to it upon a motion. If he had decided it upon that ground, it perhaps would not have been the subject of appeal. But he did not. We know he did not by his *opinion ;* and that is

one way—the usual way—by which we determine whether the order was the result of an exercise of the judge's *discretion.* In such cases, when we thus ascertain it has not been made for merely *discretionory* reasons, it is the subject of appeal, and liable to· be reversed if erroneously decided. (*McElwain* v. *Corning,* 12 *Abbott,* 16. *McMahon* v. *Mutual Benefit Life Insurance Co., Id.* 28. *Beach* v. *Chamberlain,* 3 *Wend.* 366.)

The order also denied to the plaintiffs the exclusive right to a sum of money amounting to $17.273.94. It may, therefore, without an abuse of terms, be appropriately said to affect a substantial right. (*Code,* § 349, *sub.* 3. *Merritt* v. *Thompson,* 10 *How.* 428. *Kirby* v. *Fitzpatrick,* 18 *N. Y. Rep.* 484.) It seems to me beyond question appealable.

II. As the motion is made according to the notice, in behalf of the sheriff, as well as in behalf of the bank, the objection that the motion can only be made by the sheriff cannot prevail. It is in fact made by the sheriff. The technical difficulty, if there were one, is still farther obviated by the avowal on the part of the plaintiffs that they are content to have the order made, declaring the sheriff entitled to the funds, instead of the plaintiffs. But upon principle I see no objection whatever, whenever funds converted into cash are held by a sheriff, receiver, or other officer or trustee, to a motion by any one of the claimants of such a fund for their payment to him, upon notice to the other parties interested and to the officer holding the funds. It is also in accordance with long established practice.

III. I do not regard the judgment as irregular, though not signed by the clerk—at least not void, so as to enable a third person to object to its invalidity, on that ground. Whatever may have been the rule under the revised statutes or the judiciary act, it seems to me it should not be held to be so under the code. (*Code,* §§ 280, 281. 3 *R. S. 5th ed.* 638, § 10, [11.] *Judiciary Act, Laws of* 1847, *chap.* 280, § 53.) The present law and practice requires the judgment to be

The Artisans' Bank *v.* Treadwell.

*entered* in the judgment book, and does not expressly require it to be signed. The judgment roll is to contain a *copy* of the judgment, and however fit or unobjectionable it may be, as it has been decided to be, that the clerk should sign it, I do not regard it as indispensable to its validity. (*Schenectady Plank Road Co.* v. *Thatcher*, 6 *How.* 226. *Sup. Court Rules*, 9.)

IV. The order appointing the receiver cannot, as against third persons, date or relate back beyond the order appointing him. It was irregular and improper to insert such a clause in the order appointing the receiver in this case. (*Wilson* v. *Allen*, 6 *Barb.* 542. *Rutter* v. *Tallis*, 5 *Sandf.* 610. *West* v. *Fraser, Id.* 653. *Gillet* v. *Fairchild*, 4 *Denio*, 80.)

Nor could its insertion affect interested parties not notified. It would be most unjust to vest the receiver with title at a period previous to the date of his appointment. It cannot have that effect in this instance.

V. I think the facts are such as to show an *actual* levy by the sheriff previous to the appointment of a receiver. To constitute a levy the officer must undoubtedly see the goods, (with perhaps one exception,) and they must be within his power, at least so far as to assert title to them, in the presence of those who obstruct the execution of his process. But it can never be necessary that the debtor or owner of the goods should *acquiesce* in the levy; otherwise many a levy would never become effectual. There may be cases where the debtor's knowledge and acquiescence may make it unimportant for the officer to pursue every step necessary to perfect a complete levy, with the same nicety and particularity that he would be otherwise expected to do ; but it can never be essential to the validity of a levy to obtain the debtor's consent.

VI. It is claimed that the lien of the execution, in this case, extends only to the interests of the several defendants named therein, in the partnership property. But this position cannot, I think, be successfully maintained. It is cer-

tainly possible to conceive that the four parties on whom process was actually served might be indebted to the plaintiffs alone, without any joint or concurring indebtedness on the part of the special partner, or of the limited partnership.

And it seems to me equally clear, that for a debt owing by all the partners, general and special—in other words, by the limited partnership—a suit is well brought against the general partners alone; and that a judgment and execution in such suit, levied upon the property of the partnership, would bind the entire interest of all the partners. This seems to follow inevitably from the provision that "suits in relation to the business of the partnership may be brought and conducted by and against the general partners, in the same manner as if there were no special partners." (1 *R. S.* 766.) This must be construed to mean not only that they may thus be brought "in the same manner," but "with the same effect." To give it any other construction would be to pervert the object of the statute; to mislead and deceive the creditors of the partnership.

Again. The special partner, as such, has no interest or part ownership in the property. He contributes a certain sum to the capital stock, in *cash,* and the general partners invest it, as they think proper. He has a *claim* against the partnership for the money advanced, or, as *between themselves,* for any portion of the profits which they may agree upon. He may lend money or sell goods to the firm, and to that extent become like other persons, a creditor of the partnership. But it is against the whole policy of the limited partnership act that he should have, as against third persons or the creditors of the firm, a particle of interest in the partnership property, or be able in any way to control or dispose of it. The statute, it is true, says if he attempts to interfere in the business, except in a special way and to a limited extent, carefully defined, he shall be liable as a general partner. But this evidently does not mean to increase his power, but to extend his liability. It does not mean to imply that by

so doing he can effectually acquire or dispose of an interest in the partnership property, but that he thereby contracts the liability of having *all* his property liable for the partnership debts. Much less does it mean that by this unlawful and unauthorized interference (probably not known to the creditor) he can, unless personally sued, absolutely withdraw from the partnership creditors a certain interest—*his* interest—in the partnership property.

How is the amount and extent of that interest to be ascertained? It would not appear in the *certificate* of the limited partnership, required to be filed by law. That only designates "the amount of capital which each *special* partner shall have contributed to the common stock." (1 *R. S.* 764, § 4.) Nor would it necessarily appear in the articles of copartnership (if any there were) executed between the partners themselves. And I apprehend the law does not contemplate that, in the absence of any such designation, a nice scrutiny should be instituted to ascertain the amount in value which each partner contributed to the common stock, and declare the interest of each partner in the ultimate property of the partnership to be in the same proportion. The rule seems to me impracticable, as well as unjust, and I am persuaded it has no real foundation in the terms or spirit of the statute.

VII. The remaining question is one of great practical importance, and not unattended with difficulty. It is claimed by the receiver that whenever a limited partnership becomes insolvent, *from that time,* irrespective of the condition of any creditor's demand, its assets become trust funds for the benefit of all the creditors of the partnership; and that no creditor, either by superior diligence or by the favor of the partners, can acquire or possess any valid lien in preference to other creditors.

If this proposition is to be maintained in its full force, then it will follow as a necessary consequence, (1.) That the period of *actual insolvency* of the limited partnership is the

true and only test to determine when the property of the partnership becomes suddenly, and by operation of law, transmuted into a *trust fund* for the general and equal benefit of all its creditors. This period may often, for a considerable time, be uncertain; and must usually for a considerable time be unknown to the creditors of the partnership; and in the general crash which follows, vigilant creditors must necessarily share the same fate with careless and unwary ones, and suffer the same extent of loss. (2.) If the period of actual insolvency is the test, then it cannot be material whether a creditor has obtained an *apparent* lien on the property by levy under a judgment and execution. It is swept away and removed *because* the law forbids any preference or precedence whatever, either by the act of the parties or operation of law, after absolute *equality* has become the law of the trust by the occurrence of insolvency. (3.) Legal proceedings for the recovery of a debt must be almost wholly nugatory. If the partnership be solvent, such proceedings will seldom be necessary. If it be insolvent, they will, if designed for the recovery of the debt or to obtain a preference, be worse than useless. For they will not only wholly fail to effect that object, but will entail upon the creditor the expenses of the proceedings. A *judgment* will be of as little avail in fixing a lien upon *real* estate, as an execution upon *personal* property. Both must fall before that equality among creditors which is the irreversible law of the trust.

In my own opinion, these consequences do not inevitably follow from the insolvency of a limited partnership. Certainly they have not been *expressly declared* by the law, and I do not think they were within the contemplation of the law makers. The statute simply provides that any disposition of the property of the partnership, made by the partnership when in a state of actual or contemplated insolvency, either of the partnership or of any partner, with the intent to give preference to any creditor over other creditors of the partnership or such partner, and every judgment confessed, lien cre-

ated, or security given by such partnership, under like circumstances and with like intent, shall be void as against the creditors of the partnership.

The same consequence is declared as to any disposition of the property of a general or special partner, or lien created or security given thereon, with the intent to prefer any creditor of such partner or of the partnership. (1 *R. S.* 766, 767, §§ 20, 21.)

These provisions are all aimed at the *partners* themselves, and not at the *creditors* of the partnership. They doubtless reach and overthrow proceedings which, though *nominally* in behalf of creditors, are really *collusive* between a creditor and the partnership. But I think they were not intended to reach, and should not be permitted to overthrow, *bona fide* proceedings by a creditor *in hostility* to the partnership, instituted for the simple and honest purpose of recovering a debt and obtaining a preference by superior vigilance.

It may be that in accordance with the spirit of this enactment it is legitimate for this court, as a court of equity, to decree equality among creditors who have not obtained any superior lien, upon the complaint of a simple contract creditor in an action in which the partners are made parties, and such creditors as choose to come in under the decree, (*Janes* v. *Lansing,* 7 *Paige,* 583 ; *Whitewright* v. *Stimpson,* 2 *Barb. S. C. R.* 379 ;) and even to declare that such rule must be applied to all those creditors who have not obtained a superior lien at the time the court takes jurisdiction of the fund by the appointment of a receiver—which is as far as any adjudicated case has gone, that has come to my notice, except the case of *Jackson* v. *Sheldon,* (9 *Abbott,* 127,) to which I shall presently refer.

But this is as far as I am willing to go. And if the case of *Jackson* v. *Sheldon* was intended to go farther, and to make an equal division of the assets among those who were creditors *at the moment* of actual or contemplated insolvency, whatever might be the *shape* in which their demands

might be, whether in judgment or execution, or progressing towards it, and reaching that stage before the appointment of a receiver, I think the case was not well decided, and ought not to be followed.

The chancellor, in *Innes* v. *Lansing*, (7 *Paige*, 586,) has employed language countenancing the idea that it is the duty of the court to carry into effect the principle of the statute, which is "an equal distribution of the partnership effects among all its creditors, by treating the property of the limited partnership after insolvency as a trust fund for the benefit of all the creditors." And Mr. Justice Davies, in *Jackson* v. *Sheldon*, (9 *Abbott*, 134,) has said, "on the happening of insolvency, the assets of a limited copartnership, equally with those of a moneyed corporation, have attached to them the character of trust funds, in which all creditors are entitled equally to participate, and in which no one can share to the disadvantage of the others."

In a general sense these remarks are true, in both the cases above cited. The assets are trust funds for the benefit of the creditors equally, except such as by superior vigilance have obtained a lien on the property of the partnership. And they become trust funds for such mode of distribution, so far as any action of the partners is concerned, at the time of insolvency, and so far as the action of creditors is concerned, at the time the court takes possession of the fund, either by a decree or by the appointment of a receiver. Until that time, in my opinion, it is the right of every creditor to seek a preference and to obtain one if he can, by superior vigilance.

In *Innes* v. *Lansing*, which did not raise the point now in controversy, the chancellor concedes that the suit brought by the creditor, for equal distribution, might be *discontinued* at any time before decree, on payment of his debt and costs, or other arrangement with the partners. And in arguing the right of a simple contract creditor to bring such a suit, he says, "it is evident from these statutory provisions, that the

legislature could not have intended that a creditor of such insolvent limited partnership should be compelled to proceed to judgment and execution at law, *the necessary effect of which might be to give him a preference over other creditors,* before he could be permitted to file a bill in this court to prevent the partnership funds from being wasted by the insolvent partners, and to obtain payment of a ratable proportion out of the fund."

In the case of *Jackson* v. *Sheldon,* it is also obvious that the decision of the court was mainly founded upon the idea of a *collusion* between the partners and the prosecuting creditor. And Justice Clerke dissents from the opinion of a majority of the court, because he found no sufficient evidence of such collusion. The case, therefore, may well be regarded as authority for the result which the court reached, by reason of the conclusion on the important question of fact at which a majority of the court arrived, without making it decisive upon the other important legal principle above discussed. As to this last, I do not regard it as of controlling force.

My own impressions are, therefore, in favor of the conclusion that the plaintiffs, or the sheriff, are entitled to the fund in question, to the extent of the plaintiffs' judgment. But the case is one of very considerable magnitude, and the legal principles involved not altogether decisively settled. Some of the questions of fact, especially those relating to the levy claimed by the receiver, seem not to be entirely clear, and the question itself is one which may with propriety go to the court of last resort, which it is alleged it is not plain can be done by appeal from our order. I am therefore inclined, in accordance with the suggestion of the counsel for the respondent, to give to this matter the direction proposed by him; that is, to give the plaintiffs the opportunity to determine the question in a more deliberate way, by the institution of an action.

The order of the special term should therefore be affirmed, with ten dollars costs in the court below and in this court, to

the party finally successful in obtaining the fund; without determining the question of right, and without prejudice to a proper action for said fund or its proceeds by the Artisans' Bank, or the sheriff, against the receiver and such other parties as they shall be advised, (which action is hereby authorized to be brought,) and with an injunction against the receiver, to restrain him from disposing of such fund to the prejudice of the plaintiffs until the determination of said action, or until the further order of this court.

[ALBANY GENERAL TERM, May 6, 1861. *Gould, Hogeboom* and *Peckham,* Justices.]