ALFRED H. BATCHELDER ET AL., Appellants, v. GERSON L. ALTHEIMER ET. AL., Respondents.

April 5, 1881.

1. Under the statute, the assets of a limited partnership are a trust-fund in a sense in which those of an ordinary partnership are not; and the aid of a court of chancery may be effectually invoked to distribute such fund equitably among the creditors.

2. A contract creditor of an insolvent limited partnership may, without having reduced his claim to judgment, invoke equity, on behalf of himself and other creditors, to protect and ratably distribute the assets of such partnership, and to appoint a receiver for that purpose.

APPEAL from the St. Louis Circuit Court, BOYLE, J.
*Reversed and remanded.*

PATRICK & FRANK, for the appellants: Whenever a limited partnership becomes insolvent, or is in contemplation of insolvency, its property becomes a trust-fund for equal and ratable distribution among all the creditors; and any creditor may file a bill in equity in behalf of himself and the other creditors, and may have a receiver appointed to protect the trust-fund, and may have the members of the firm restrained, by injunction, from intermeddling with the fund. — *Innes* v. *Lansing*, 7 Paige, 583; *Kerr* v. *Blodgett*, 48 N. Y. 63; *Hayes* v. *Heger*, 3 Sandf. 294; *Whitewright* v. *Stimpson*, 2 Barb. 379; *Galwey* v. *Sugar Co.*, 36 Barb. 263; *Groshon* v. *Lyon*, 16 Barb. 466; *Lachaise* v. *Marks*, 4 E. D. Smith, 614; *Conro* v. *Iron Co.*, 7 How. Pr. 166; *Levy* v. *Ley*, 6 Abb. Pr. 91; *Laclaire* v. *Lord*, 10 How. Pr. 461; *Jackson* v. *Sheldon*, 9 Abb. Pr. 127; *Bank* v. *Treadwell*, 34 Barb. 561; *Van Alstyne* v. *Cook*, 25 N. Y. 480.

MYERS & ARNSTEIN and BROADHEAD, SLAYBACK & HAEUSSLER, for the respondents: Under the allegations of the petition, all the defendants being residents and citizens of this State, the plaintiffs are not entitled to proceed in equity, as they are not judgment creditors. — *Martin* v. *Michael*,

23 Mo. 50 ; *Merry* v. *Fremon,* 44 Mo. 518 ; *Alnutt* v. *Leper,* 48 Mo. 319 ; *Wiggins* v. *Armstrong,* 2 Johns. Ch. 144 ; *Uhl* v. *Dillen,* 10 Md. 500 ; High on Inj., sects. 26, 94, 250 ; *Hubbard* y. *Hubbard,* 14 Md. 356 ; *Kent* v. *Curtis,* 4 Mo. App. 121 ; *McKenzie* v. *Cowing,* 4 Cranch C. Ct. 479 ; *Johnson* v. *Farmum,* 56 Ga. 144 ; *Mittnight* v. *Smith,* 17 N. J. Eq. 259 ; *Wintringham* v. *Wintringham,* 20 Johns. 296 ; *Brown* v. *Bank,* 5 Mo. App. 1 ; High on Rec., sect. 406 ; *Brinkerhoff* v. *Brown,* 4 Johns. Ch. 671 ; Story on Part., sects. 357–361 ; *Jarvis* v. *Brooks,* 23 N. H. 140 ; Adams' Eq. [354]* ; Story's Eq. Jur., sect. 672*a.*

BAKEWELL, J., delivered the opinion of the court.

The petition in this case alleges that on November 25, 1879, plaintiff and his co-plaintiffs were engaged in Boston and other places as wholesale dealers in boots and shoes and other goods ; .that on July 1, 1879, defendants formed a limited partnership under the Missouri statute, with defendant Rosenberg as the limited partner ; that the defendant partners are indebted to plaintiffs respectively in various amounts, aggregating $20,000 ; of which various amounts on open account, aggregating about $3,500, are due, and the balance is not yet due ; and that the defendants are indebted to other persons in the sum of $150,000 for goods purchased by the firm between July 1 and October 28, 1879 ; that said limited partnership is insolvent, and has been for many weeks past, in contemplation of insolvency ; and that the general partners are also insolvent ; that since said firm was insolvent, the general partners have been making sales and improper dispositions of the property of the firm, or in some way secreting its effects ; that they control and are able and likely to divert the effects of the firm from the creditors equally, and are allowing favorite creditors to sue so as to get an advantage in priority of payment ; that said changes and transfers of the effects

of the firm and of its general partners have been made by
the firm and the general partners for the purpose of giving
priority to one creditor over other creditors of the firm and
of the general partners while the firm was insolvent.

The petition then sets forth several instances of alleged
fraudulent shipments of goods of the firm with the marks
of the shippers erased, and of secreting goods in ware-
houses, and raising large sums in bank from warehouse-
receipts thus obtained, on a pledge at three-fifths of the
value of the goods, and of causing liens to be affixed to
goods of the firm, and of consigning goods to fictitious per-
sons, and of refusal to give information to creditors, and
to answer questions about the business of the firm, and to
allow creditors to inspect the books ; and of secreting notes,
bills, and evidence of indebtedness belonging to the firm.
The petition further says that, while the firm have $45,000
in cash secreted, they have caused several collusive attach-
ments to be levied upon their goods.    Several of these at-
tachments, for amounts of thousands of dollars each, are
alleged to have been made simultaneously by Felix J. Rosen-
berg and Gustave Altheimer, upon all the visible and known
property of defendants, the amounts in the attachment suits
aggregating $35,000.    It is alleged that these attachments
were made collusively, to hold creditors at a distance and
force a compromise ; and that the alleged grounds of these
attachments are fraudulent conveyances and concealment
of property by defendants to hinder and delay creditors.
The prayer is that a receiver be appointed of the defendant
firm, to protect the trust-fund and distribute it among the
creditors who may come in and prove their debts under the
decree to be obtained ; to collect outstanding debts and
take possession of all the property of the firm, and that de-
fendants be ordered to deliver to the receiver all the prop-
erty and books of the firm, and be enjoined from intermed-
dling with the effects of the partnership until further order.
A preliminary injunction was granted, which was afterwards

dissolved, and the order appointing a receiver vacated. Defendants demurred to the petition, as not stating facts sufficient to constitute a cause of action, and the demurrer was sustained, and there was judgment for defendants.

The well-established general rule is, that creditors who have no lien and no title, and who have not reduced their claims to judgments where this can be done, are not in a condition to call for an injunction and the appointment of a receiver. Whether the debts are due or not is immaterial. The insuperable difficulty is that the creditors have not legally established their claims ; and until they have done so, until their claims are reduced to judgments, they have no right to deprive the debtor of possession. The courts cannot, at the instance of a creditor at large, restrain a debtor in the enjoyment and disposition of his property. To do so would open a wide door for much mischief, making the rights of the citizen depend on the uncertain discretion of judges instead of the well-defined rules of law. This is well settled in Missouri and elsewhere. It is unnecessary to cite authority in support of the proposition, nor is this doctrine at all called in question by counsel for plaintiffs. It is claimed that the primary object of the bill, the first and principal purpose which it is intended to accomplish, presents in itself a cause of equity cognizance, and that the case is not therefore within the rule. The primary object of this bill is claimed to be the assertion of a trust and the protection of a trust-fund, ratable distribution of the fund being but an incident to the primary object of the bill. A simple contract creditor, one who has not reduced his claim to judgment, may, it is contended, enforce the trust and invoke the aid of a court of equity for that purpose.

The enforcement of pure trusts is undoubtedly one of the original and inherent powers of courts of equity. Where, by direction of the debtor, the property had been conveyed in trust for the general benefit of his creditors to one of the

debtors, and the bill was filed for all the creditors to establish the trust, it is held that these facts constitute the grounds of jurisdiction. This was said in *Kent* v. *Curtis*, 4 Mo. App. 127; and there can be no doubt of the doctrine. *Russell* v. *Clark's Executors*, 7 Cranch, 87; *Miller·* v. *Davidson*, 8 Ill. 518; *O'Brien* v. *Coulter*, 2 Blackf. 421. And it must be immaterial whether the trust is declared by a deed of the debtor or by statute. If by law the assets of a limited partnership become, when the partnership becomes insolvent, a special equitable fund for the payment of its debts ratably, then there can be no question that a creditor at large who comes into a court of chancery, not seeking the satisfaction of his debt specifically, but filing the bill for the benefit of himself and others and to remove the fund beyond the reach of abuse, has a standing in court; and then this petition states a good course of action.

The legislation on the subject of special partnerships was borrowed from the French law. The *Société en Commandite* was unknown to the common law, by which all partners were liable to the obligations of the firm, on the principle that he who shares the profit should share the burden. By the *Société en Commandite*, a special privilege was secured. The sleeping partner was liable only for the amount he invested in the partnership. The privilege obtained, however, only on compliance with all the provisions of law, which exonerated him from general liability. 3 Kent's Comm. 34; *Ames* v. *Downing*, 1 Bradf. 321–329. This system of limited partnership was first introduced by statute into New York, and subsequently adopted in other States of the Union. The New York statute (1 Rev. Stats. 766) provides (sects. 20, 21) that every sale, assignment, or transfer of any of the effects of a limited partnership, made by such partnership when insolvent, or in contemplation of insolvency of the firm or of one of the partners, with intent of giving a preference to either creditors, and every judgment confessed, lien created, or secur-

ity given by such partnership under like circumstances and with a like intent, shall be void as against the creditors of such partnership ; and the provisions are the same as to the transfer of individual effects of a general or a special partner of such firm, when insolvent or contemplating insolvency.

Our law provides (Rev. Stats., sects. 3409, 3410) that, if the partnership becomes insolvent, no special partner shall be paid as a creditor of the firm, or receive the benefit of any lien in his favor as such, until the other creditors of the firm are satisfied ; and that no sale or change of the effects of the firm, or of any member of the firm, made for the purpose of giving a preference or priority to one over another of his or its creditors, shall be valid against its creditors, if made when he or the firm is insolvent or in contemplation of insolvency. Under the New York statute, Chancellor Walworth held, in the case of *Innes* v. *Lansing*, 7 Paige, 583, decided in 1839, that the statute created a special trust-fund, which it is the duty of a court of chancery to protect on proper application of a creditor at large, when applying for himself and other creditors, on the insolvency of the firm. His language is as follows : —

" It is evident, from these statutory provisions, that the Legislature could not have intended that a creditor of such insolvent limited partnerships should be compelled to proceed to judgment and execution at law, the necessary effect of which may be to give him a preference over other creditors, before he could be permitted to file a bill in this court to prevent the partnership assets from being wasted by the insolvent partners, and obtain payment of a ratable portion of his debt out of the fund. Although any creditor, therefore, may proceed at law for the recovery of his debt, unless a decree has been obtained for the benefit of all the creditors equally, or the property has been transferred to a trustee or receiver for the purpose of having such a ratable distribution thereof, I think this court is bound to carry

into effect the principle of the statute by treating the property of the limited partnership, after insolvency, as a trust-fund for the benefit of all the creditors ; and if the insolvent partners neglect to place the partnership's effects in the hands of a proper and responsible trustee, to be distributed without delay amongst all the creditors of the firm, other than the special partner, ratably, in proportion to the amount of their several debts, either due or to become due,. any creditor may file a bill in this court in behalf of himself and the other creditors of the firm, and may have a receiver appointed to protect the trust-fund and to distribute it among the several creditors, who may come in and prove their debts under the decree to be obtained on such a bill. I regret that I am obliged to extend the jurisdiction of this court to this new class of cases.   But whenever the Legislature creates new rights in parties, for the protection and enforcement of which rights the common law affords no effectual remedy and the statute itself does not prescribe the mode in which such rights are to be protected, this court, in the exercise of its undoubted jurisdiction, is bound to give to a party the relief to which he is equitably entitled under the statute.   For these reasons I think the bill was properly filed.''

This case was followed in *Whitewright* v. *Stimpson*, 2 Barb. 379.   It was cited with approval in *Conro* v. *Iron Company*, 12 Barb. 27, 60 ; *Groshon* v. *Lyon*, 16 Barb. 461, 466 ; *Galwey* v. *Sugar Company*, 36 Barb. 256, 264 ; *Lachaise* v. *Marks*, 4 E. D. Smith, 610.   It is followed in *Levy* v. *Ley*, 6 Abb. Pr. 89 ; *La Chaise* v. *Lord*, 10 How. Pr. 461 ; *Kerr* v. *Blodgett*, 48 N. Y. 63.   In *Whitcombe* v. *Fowle*, 56 How. Pr. 356, a very recent case, it is said that the doctrine laid down in *Innes* v. *Lansing* has not been disturbed or disputed ; and it seems to have been always held in New York, since the decision of that case by Chancellor Walworth, that when a limited partnership becomes insolvent, any creditor, though not a judgment creditor, may file

a bill in behalf of himself and other creditors, to restrain the insolvent partners from disposing of the property contrary to law, and for the appointment of a receiver. *Jackson* v. *Sheldon*, 9 Abb. Pr. 127, decided in 1859, was a case in which certain creditors obtained judgments upon failure to answer, against an insolvent limited partnership, and levied execution on the partnership effects, after which the partners made a general assignment for the benefit of creditors without preference. It was held that the court could, at the suit of a creditor at large, enjoin these proceedings, appoint a receiver to take charge of the assets of the firm as they existed at the time of the insolvency, discharged of the lien of the executions, and to distribute them equally among all the creditors.

But in *Artisan's Bank* v. *Treadwell*, 34 Barb. 561, whilst it was taken for granted that a creditor at large had a standing in a court of chancery against the assets of a limited insolvent partnership, and it was conceded that the chancellor had jurisdiction in such a case to decree equality among creditors who have not obtained any superior lien, upon the complaint of a simple contract creditor in an action in which the partners are made parties, as well as such creditors who choose to come in under the decree, and to declare that such rule must be applied to all those who have not obtained a superior lien at the time the court takes jurisdiction of the fund by the appointment of a receiver, it was maintained that, until that time, it is the right of every creditor to obtain a preference, if he can, by superior vigilance, and that such lien must be respected, when obtained by a hostile creditor *in invitum* of the partnership, the property to be divided equally amongst the other creditors, after satisfying those who have established a lien. And this case was followed in *Van Alstyne* v. *Cook*, 25 N. Y. 489.

These cases cannot be reconciled with the apparent effect of some language used by Chancellor Walworth in *Innes* v. *Lansing*, and with the point actually decided in *Jackson*

v. *Sheldon*, 9 Abb. Pr. 127 ; *Heyer* v. *Heyer*, 3 Sandf. 293, and *Whitewright* v. *Stimpson*, 2 Barb. 379, that the funds of a limited partnership are, from the moment of insolvency, trust-funds in such a sense that not only no preference can be made by the insolvent firm, but no diligence of the creditor can secure to him a preference.    But these cases accept as the recognized doctrine in New York, that under the statute the funds of an insolvent limited partnership are trust-funds to be administered by a court of chancery, when appealed to by a creditor at large to protect and distribute them upon equitable principles.

   That the funds of an ordinary partnership are in a certain sense trust-funds, is also true.   In neither case are the funds of the partnership in the hands of the partners trust-funds in such a sense as to give any control over them to a court of equity until it is properly appealed to.   In the case of an ordinary partnership, it is held in New York ( *Greenwood* v. *Brodhead*, 8 Barb. 596 ; *Crippen* v. *Hudson*, 13 N. Y. 167 ), as it is held elsewhere ( *Case* v. *Beauregard*, 99 U. S. 119), that this appeal to equity cannot be made by a creditor unless he has exhausted first his legal remedy and at least obtained a judgment.   But in view of the provisions of the statute, it is held in New York, as we have seen, that in case of a limited partnership, a creditor at large may file a bill on behalf of himself and the other creditors, for the appointment of a receiver ; and it is obvious that if this cannot be done, the special provisions of the statute will, in most cases, be nugatory.   The only discrepancy in the cases in New York is as to the period at which the funds of a limited partnership become trust-funds in a special sense, the earlier cases holding that from the moment of insolvency they become trust-funds to be distributed equally, and the later cases deciding that a preference may be obtained by hostile proceedings against the firm after insolvency, but not after a creditor has filed his bill for equitable relief, or at least not after the appointment of a

receiver.    The appointment of a receiver is a sequestration, by act of law, of the property, which vests in him by relation from the date of the order.

The statutes of Missouri and New York are so alike in the provisions under consideration, that the reasoning of the New York cases applies to either law.    Whether the statute does or does not impress a trust upon the assets of a limited partnership from the moment of its insolvency, it certainly does seem to render the assets trust-funds in a sense in which those of an ordinary partnership are not a trust-funds, and to contemplate a remedy for the creditor which, in the case of an ordinary partnership, he cannot have. The *pro rata* distribution of the assets cannot be effected without the aid of a court of chancery.    It is the ordinary jurisdiction of a court of equity to dissolve a partnership and distribute its assets on the application of one of the partners.    From the moment of such an application, the funds became trust-funds.    They were not so in the hands of the partners.    The funds of a limited partnership may not be trust-funds in the hands of the partners, or at the moment of insolvency, but they become so when the aid of equity is effectually invoked ; and we think that the manifest intention of the Legislature, in the sections quoted above, was to give to the creditor an effectual remedy.    If he must apply first to a court of law and obtain a judgment, the provisions of the statute are nugatory ; he has then no protection in the case of a limited partnership which he has not in the case of a general partnership.

Without determining, therefore, whether or not the funds become impressed with a trust in favor of creditors from the moment of insolvency, which appears to have been the view originally taken of the matter in New York, or whether the trust is impressed from the moment of an action commenced and a *lis pendens*, or only from the time that a receiver is appointed, we think that the case of a limited insolvent partnership is one in which the creditor

may at once apply for such equitable relief as was asked in this bill. The court is bound to carry into effect the principle of the statute, which is an equitable and equal distribution of the partnership effects amongst creditors. If the several partners of an insolvent special partnership refuse to do their duty by voluntarily placing the assets in the hands of a trustee, a receiver must be appointed. It is evident, as Chancellor Walworth observes, that the Legislature could not have intended that a creditor of an insolvent limited partnership should be compelled to proceed to judgment and execution at law, thus obtaining that preference over other creditors before filing his bill in chancery which the statute prohibits the partner from giving to any one.

Whether an execution creditor, having obtained a lien, should share *pro rata* in the general assets, we need not determine, for the question is not before us in the present case.

We think that there is equity in appellant's bill, and the demurrer should have been overruled.

The judgment is reversed and the cause remanded. All the judges concur.